Commonwealth *v.* Wiloil Corporation, Appellant.

Argued May 21, 1934.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. Smith Christy*, of *Weil, Christy & Weil*, for appellant.

*John Y. Scott*, Deputy Attorney General, with him *Wm. A. Schnader*, Attorney General, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1934:

The inquiry to be pursued in this case is whether the Commonwealth may collect certain gasoline taxes from appellant under the Liquid Fuels Tax Act of May 21, 1931, P. L. 149, 72 P. S., section 2611 (b).

Appellant is a Pennsylvania corporation with its principal office and place of business in this State. It is engaged in selling liquid fuels at wholesale, and is a permit-holder under the provisions of the tax act. The department of revenue discovered that it had failed to report and pay tax upon certain cars of gasoline sold by it to the Ace Oil Corporation and the High Power Gasoline Company, both of Philadelphia. All of the gasoline was sold by appellant's agent in Philadelphia to the two companies named. The sales were subject to and received the approval of appellant at its office in Pittsburgh. At the time the sales were made appellant did not possess the gasoline. To fill the orders taken by its agent appellant obtained the gasoline from the Crane Hook Company in Wilmington, Delaware. Shipments were made direct from Wilmington to the purchasers in Philadelphia or Essington, Pennsylvania. In each instance the car containing the gasoline moved under a bill of lading showing appellant as consignor and either one or the other of the two purchasing concerns as con-

signee. The place of shipment was indicated as Wilmington, and of destination as Philadelphia, or Essington, consignee's private sidings. Freight was not prepaid and the consignee paid it. The invoices made out by appellant and sent to the consignees state that the shipments were made f. o. b. Wilmington, and they include in the price to be paid the tax on the gasoline.

Appellant contends that the tax was added by it to the invoice in ignorance of a proper understanding of the law. However this may be, it appears that after appellant was advised by counsel that it was not liable to collect and pay over the tax to the Commonwealth, it continued to include the impost in subsequent invoices. Appellant has been unable to collect the tax, as both vendees are insolvent.

The first position assumed by appellant is that the title to the gasoline passed to the purchasers at Wilmington, Delaware, and that they were the importers under the terms of the act and alone liable for the tax. The second position taken is that, if the title did not pass at Wilmington, deliveries were made to the purchasers in Pennsylvania in tank cars, the original packages, that the shipments were at all times in interstate commerce and the charging of the tax to the seller is illegal, as it imposes a burden upon such commerce, and that, if that be the intent of the act, it is unconstitutional.

Taking up the first position, we find that the Sales Act of May 19, 1915, P. L. 543, section 18, 69 P. S., section 142, recognizes that the intention of the buyer and the seller determines the time of the passage of title. For the purpose of ascertaining their intention, the act says regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

We start with the fact that the sale was actually made in Pennsylvania. The contention of appellant arises out of the circumstance that the price was fixed f. o. b. Wilmington. This, however, does not necessarily mean that

title passed there, particularly is this so in view of the intention of the parties evidenced by the provision in their contract that the vendees should pay the tax to the vendors. If the parties contemplated that the title passed at Wilmington, outside Pennsylvania, and the gasoline there belonged to the purchasers, it is difficult to understand how the seller could have regarded itself as in any way liable for a Pennsylvania tax. As we view it, the provision in the contract that the gasoline was to be f. o. b. Wilmington was not intended to designate the place of delivery, but to fix the full price to be paid. This is shown by plaintiff's invoice offered in evidence, which, after setting forth the sale, contains the following: "Price 5½c gal. f. o. b. Wilmington, Del. plus 3c tax." Furthermore, plaintiff's secretary and treasurer testified, in answer to the question whether it was not the practice in their business to sell gasoline f. o. b. certain places in order to fix the price, that it was, and that the purchaser when buying gasoline has to take this into consideration, just as the buyer of an automobile has to take into account, when he is purchasing, the custom in that trade to name a price f. o. b. the place of manufacture. It is also apparent from the testimony of the secretary and treasurer that, although the consignee was to pay the freight from Wilmington, this also was only as a matter of price, not of delivery. That f. o. b. a certain place may be merely price-fixing was recognized in Dannemiller v. Kirkpatrick, 201 Pa. 218. See also Charles E. Hires Co. v. Stromeyer, 65 Pa. Superior Ct. 241, 243.

Where there is a sale of unascertained goods, the shipping directions do not determine the place of passage of title and delivery. The authorities holding that delivery to a common carrier is delivery to the vendee have no application here, because the intention of the parties, which is controlling on the question of delivery, shows that the title was not intended to pass until the goods reached their destination: Blakiston v. Davies, Turner

& Co., 42 Pa. Superior Ct. 390, 394. In Frank Pure Food Co. v. Dodson, 281 Pa. 125, which was a case of an agreement to purchase unascertained and nonexisting goods, we said, page 127: "The contract was executory; in other words, it was not a purchase of existing specific property, but an agreement to purchase unascertained and nonexistent goods, to be thereafter produced; the case, therefore, falls within Rule 4, clause 1, of section 19, of the Sales Act of May 19, 1915, P. L. 543, 545. ..... Thereunder, in the case of future goods, the title does not pass until they are ascertained and set aside by the act or consent of both parties. ...... To pass the title, the seller's appropriation of the goods must be assented to by the buyer."

We now come to appellant's second position, which is that the levying of the tax puts a burden on interstate commerce. In Hump Hairpin Mfg. Co. v. Emmerson, 258 U. S. 290, the Supreme Court of the United States said, page 294: "While a state may not use its taxing power to regulate or burden interstate commerce,...... a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights." Both appellant and the purchasers conducted their business in Pennsylvania. The sale and delivery of the gasoline occurred in Philadelphia. The fact that appellant secured the gasoline in Wilmington for the purpose of performing its contract was incidental. It was not contemplated by the agreement of sale that the gasoline be procured in Wilmington or in any other particular place. The contract could have been as well performed had it been procured by appellant in Pennsylvania. Taxation of the sale or delivery of the gasoline by appellant to its purchasers only remotely and indirectly affects interstate commerce.

The same situation was before the Supreme Court of the United States in Ware & Leland v. Mobile Co., 209

U. S. 405. The court there said, page 413: "When the delivery was upon a contract of sale made by the broker, the seller was at liberty to acquire the cotton in the market where the delivery was required or elsewhere. He did not contract to ship it from one state to the place of delivery in another state. And though it is stipulated that shipments were made from Alabama to the foreign state in some instances, that was not because of any contractual obligation so to do. In neither class of contracts, for sale or purchase, was there necessarily any movement of commodities in interstate traffic, because of the contracts made by the brokers. ...... The delivery, when one was made, was not because of any contract obliging an interstate shipment, and the fact that the purchaser might therafter transmit the subject-matter of purchase by means of interstate carriage did not make the contracts as made and executed the subjects of interstate commerce."

An analagous situation to that now confronting us existed in Banker Bros. Co. v. Penna., 222 U. S. 210. Banker Brothers Company was a corporation doing business in Pennsylvania as a retail vender of automobiles. Sales were in fact made by the company before it acquired title to the automobiles sold, and were made upon the condition that the purchaser pay the list price of the automobile f. o. b. factory, which was in Buffalo, New York. After a sale was made by Banker Brothers Company, the automobile was purchased by them from the factory, and their vendee paid to them the list price and the freight from Buffalo. The seller was not the agent of the manufacturer, but was engaged in business on its own account. The Commonwealth sued Banker Brothers Company to collect a mercantile license tax upon its gross sales to purchasers in Pennsylvania. The court held that such sales as that above outlined were not transactions in interstate commerce and that the tax was not an undue burden thereon, saying, page 214: "The fact that he [the purchaser] was liable for the freight by

virtue of the agreement to 'pay the list price f. o. b. factory' did not convert it into a sale by the manufacturer at the factory; neither was that result accomplished because, with the machine, Banker Brothers Company also delivered to the buyer in Pittsburgh a warranty from the manufacturer direct. These were mere incidents of the intrastate contract of sale between Banker Brothers Company and the purchaser in Pittsburgh, who was not concerned with the question as to how the machine was acquired by his vendor, or whether that company bought it from another dealer in the same city or from the manufacturer in New York. The contract was made in Pennsylvania, and was there to be performed by the delivery of the automobile and the payment of the balance of the purchase price. ...... The court properly held it was not an interstate transaction, but taxable under the laws of Pennsylvania."

In Baer's App., 82 Pa. Superior Ct. 414, in which the opinion was written by Mr. Justice LINN, then a member of the Superior Court, the facts showed that Baer was a wholesale lumber dealer maintaining a place of business in Reading. He dealt in lumber shipped from other states into Pennsylvania. He claimed exemption from taxation on the ground that the transactions in which he was engaged and upon which the mercantile license tax was based, were in interstate commerce. He solicited orders in Pennsylvania and filled them by purchasing lumber from dealers in other states who, by his orders, shipped direct to the vendees in Pennsylvania. He paid his vendors and his vendees paid him. Holding that the tax was legally imposed and that it did not unduly burden interstate commerce, Judge LINN said, page 416: "He was not taxed on or according to his purchase made in some other state, but by his sales here for delivery to vendees in this State. The tax was on his mercantile business of selling,...... measured by volume, conducted here where he resided. That he was engaged in interstate commerce in buying out of the State the thing

wanted to complete his sale by delivery here, was merely incidental. 'But a tax that only indirectly affects the profits or returns from such commerce is not within the rule' prohibiting the tax: U. S. Glue Co. v. Oak Creek, 247 U. S. 321, 326, 328. As soon as the lumber came into this State, it might have been taxed, though brought in for delivery by him on his sales here: Sonneborn Bros. v. Cureton, 262 U. S. 506, 516; then certainly the proceeds may be used as a tax base."

Appellant strongly relies upon Sonneborn Bros. v. Cureton, 262 U. S. 506. In that case, which apparently modified many prior decisions, the seller himself was located in a different state from the purchaser and the contract of sale was made with the purchaser by an agent of the seller. The contract, therefore, clearly contemplated a shipment from the seller to the purchaser in interstate commerce. The movement in interstate commerce was not incidental but was intended by the parties to the contract of sale. In the instant case, as in the Banker Brothers Company Case, the sellers were acting as independent principals, making contracts with purchasers in the same state, though they subsequently purchased the goods necessary to complete such contracts from persons in other states. In both cases the goods were shipped to the purchasers direct from the persons supplying them in other states, but such shipment was incidental.

In the recent case of Minnesota v. Blausius, 290 U. S. 1, 78 L. ed. Adv. Ops. 19 (1933), the court speaking through Mr. Chief Justice HUGHES said: "But because there is a flow of interstate commerce which is subject to the regulating power of the congress, it does not necessarily follow that, in the absence of a conflict with the exercise of that power, a state may not lay a nondiscriminatory tax upon property which, although connected with that flow as a general course of business, has come to rest and has acquired a situs within the State. ......
'The question [that is, as to the validity of the state tax],

it should be observed, is not with respect to the extent of the power of congress to regulate interstate commerce, but whether a particular exercise of state power, in view of its nature and operation, must be deemed to be in conflict with this paramount authority.'" In Federal Compress & Warehouse Co. v. McLean, 291 U. S. 17, 78 L. ed. Adv. Ops. 343 (1934), the Supreme Court said: "The mere extension of control over a business by the national government does not withdraw it from a local tax which presents no obstacle to the execution of the national policy."

Without further traveling through the maze of the interstate commerce decisions, we are of opinion that the cases herein referred to establish that the gasoline in question, under the facts appearing, was sold and delivered by appellant in Pennsylvania, that such sale and delivery did not constitute a transaction in interstate commerce, and that therefore it was taxable.

The judgment is affirmed.