S. W. LEWIS *et al. v.* CITY OF BLUEFIELD *et al.*

(No. 8443)

Submitted September 29, 1936. Decided October 27, 1936.

*J. M. B. Lewis, Jr.,* and *Sidney J. Kwass,* for appellants.

*James S. Kahle,* for appellees.

MAXWELL, JUDGE:

This case brings in question the validity of a revenue ordinance of the City of Bluefield. At the plaintiffs' instance, the circuit court enjoined the enforcement of the ordinance as to them. The city appealed.

The ordinance was passed June 25, 1935. The title and pertinent portions of the text are as follows:

"An ordinance for the assessment, payment and collection of license taxes on the business and privilege of selling at retail and delivering coal or coke, or taking orders to purchase and deliver coal or coke within the corporate limits of the City of Bluefield.

"Be it ordained by the Board of Directors of the City of Bluefield:

"Section 1. The license tax on the business and for the privilege of selling and delivering coal or coke at retail, or taking orders to purchase and deliver coal or coke, within the corporate limits of the City of Bluefield, shall be based upon the net load of coal or coke transported over the streets of said City at one time, as hereinafter provided.

"Section 2. Every person, firm or corporation engaged in the business and privilege of selling at retail and delivering coal or coke, or taking orders to purchase and deliver coal or coke shall obtain from the City Clerk a license for the privilege of conducting such business, and the license fee therefor shall be based upon the number of vehicles used in the delivery of such coal or coke

and the net load transported by said vehicles at one time. The annual license tax shall be as follows:

"(a) For each vehicle carrying a net load of three tons or less at one time, $15.00;

"(b) For each vehicle carrying a net load of more than three tons at one time, there shall be an additional charge of $5.00 for each additional ton or fraction thereof;

"Which said tax shall not be prorated, and shall apply to all persons, firms or corporations engaged in such business whether they maintain a fixed place of business within the corporate limits of said City or not."

The first question is whether the board of directors of the city could lawfully enact such ordinance.

In the city charter there is this provision:

"The board of directors may by ordinance require city license for persons conducting and carrying on any business or vocation in the city for which the state may now or hereafter require license." Acts of the Legislature, 1921 (Municipal Charters), chapter 2, section 44.

In our general statute applicable to municipalities, there is this section:

"Whenever anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town." Code 1931, 8-4-13.

The tax, as denominated in its enactment, is clearly one of license. The thing involved is the privilege of selling coal or coke at retail in the city of Bluefield, and the basis of measure of the tax is the tonnage capacity of the vehicles employed in transporting said commodities over the city streets. This tax and its foundations are obviously distinguishable from the situation presented in *Kresge* v. *City of Bluefield,* 117 W. Va. 17, 183 S. E. 601. That case dealt with an ordinance purporting to lay a tax "for the privilege of engaging in the business of selling tangible personal property at retail and of dispensing certain selected services * * *." We held that the

tax was not in fact a license or privilege tax because its effect was to lay tribute on the natural right of consumers to buy what they desired, and therefore there was no rightful power in the city to levy the same. Under its sovereign power the state may lay such tax, but a municipality may not do so in the absence of clear legislative authority.

In conformity with the ruling in the *Kresge* case, we later disapproved a consumers' sales tax sought to be enforced in the City of Huntington. *Anderson-Newcomb Co.* v. *City of Huntington,* 117 W. Va. 716, 188 S. E. 118.

More recently, in *Mullens* v. *City of Huntington,* 117 W. Va. 740, 188 S. E. 120, we upheld a gross sales tax levied under ordinance of the said city. We found that the tax considered in the *Mullens* case was a license or privilege tax, authorized by section 6 of the Huntington charter. Acts, Second Extraordinary Session of the Legislature of 1933, chapter 161, section 6. This is the applicable charter provision: "Said city shall have, and is hereby granted, power * * * to license, tax, regulate or prohibit theatres, public dances and dance halls * * * and other things or business on which the state does or may exact a license tax * * *." The City of Huntington thus being authorized by its charter to license a business as to which the state does or may exact a license tax, it was adjudged that the state's business and occupational tax (Acts of the Legislature, Extraordinary Session, 1933, chapter 33, Code, 1933 Supplement, 11-13-2-c) afforded adequate background and basis for the Huntington ordinance.

Under the legislative enactment just referred to, there is levied an annual privilege tax "upon every person engaging or continuing within this state in the business of selling any tangible property whatsoever, real or personal, * * *." (Certain classes of business such as horticulture, agriculture, grazing, etc. are excepted from this tax.) The Act also prescribes the basis and rates of taxation. The payment of the tax is a condition precedent to the right of a person to engage in certain kinds of busi-

ness or trade. The apposite section reads: "The tax imposed by this article shall be *in addition to all other licenses and taxes levied by law as a condition precedent to engaging in any business, trade or calling.* A person exercising a privilege taxable under this article, subject to the payment of all licenses and charges which are condition precedent to exercising the privilege taxed, may exercise the privilege for the current tax year upon the condition that he shall pay the tax accruing under this article." (Italics supplied.) Code, 1933 Supplement, 11-13-10. Acts of the Legislature, Extraordinary Session, 1933, chapter 33, article 13, section 10.

Much has been written on the subject of license taxes and their inherent characteristics. It has been considered that "to license means to confer on a person the right to do something which otherwise he would not have the right to do." 17 Ruling Case Law, p. 474. In our own case of *State* v. *Coal Co.*, 36 W. Va. 802, 15 S. E. 1000, 1003, 17 L. R. A. 385 it is stated that to license means "essentially the granting of a special privilege to one or more persons not enjoyed by citizens generally * * *." But it is recognized that under the state's sovereign power of taxation, ordinary transactions may be subjected to license or privilege taxes for the purpose of raising revenue. Tiedman's Limitation of Police Power, p. 281; 1 Cooley's Constitutional Limitations (8th Ed.), p. 986; *City of Ft. Smith* v. *Scruggs*, 70 Ark. 549, 69 S. W. 679, 58 L. R. A. 921, 91 Am. St. Rep. 100; 4 Cooley on Taxation (4th Ed.), sec. 1679. "Though the business may not be within the police power, the state unquestionably has the right to tax it justly. The Legislature has prescribed a license tax for the carrying on of many lines of business that do not directly relate to the public health, safety or morals. Such, for example, are the license taxes on vendors of patent rights, on junk dealers, on traveling vendors of sewing machines and musical instruments, and on the owners of trading houseboats. It is entirely legitimate to tax a privilege, business or occupation. Of course there must be reasonable classification, and no un-

just discrimination. The tax must be equal and uniform in relation to all persons of the same class. But where a tax is imposed in compliance with these principles, no excuse for it need be sought under the police power." *Sperry & Hutchinson Co.* v. *Melton,* 69 W. Va. 124, 71 S. E. 19, 34 L. R. A. (N. S.) 433. It is on this premise that the West Virginia gross sales tax is founded, and it is correctly named by the legislature a license tax. Thus by legislative fiat the matter is set at rest.

Is there statutory foundation and justification for the Bluefield ordinance at bar? Under the legislative authorization hereinabove quoted (Bluefield Charter section 44, and Code, 8-4-13), if the state has levied a general tax such as the one herein considered, the city of Bluefield may do likewise.

It is not necessary that the state tax constituting the essential background be determined on the same basis of measurement as that employed by the city if the underlying objects are the same. That their purposes are identical is evident; both lay a sales privilege tax. So, the state having enacted a sales tax which is inclusive of the privilege of selling coal and coke, the city of Bluefield has complete authorization for the tax herein challenged. Therefore, we uphold the tax.

But, the plaintiffs say, the Bluefield tax herein under attack cannot be enforced against them because it places a burden on interstate commerce. From the stipulation of facts on which the cause was submitted in the trial court it appears: "That the plaintiffs take orders for coal from citizens and residents of the City of Bluefield, to be prepared, weighed and loaded in the State of Virginia, at a certain price and to be transported by the plaintiffs from the State of Virginia into the State of West Virginia in motor trucks and delivered to the purchaser at his residence or place of business in the City of Bluefield as directed by him for the place of delivery, and that all of said coal so sold by the plaintiffs is loaded on the trucks of the plaintiffs in the State of Virginia and delivered in said trucks as one continuous delivery,

without change, and as the original load on the said trucks so loaded in the State of Virginia, and from said State into the State of West Virginia as ordered."

Thus we have a situation wherein both the plaintiffs and their customers are residents of the City of Bluefield. Does the fact that the former sell Virginia coal to the latter and deliver it from Virginia into West Virginia have the effect of placing the federal commerce clause as a barrier against the tax ordinance we are considering? That such is the proper analysis of the situation is the reliance of the plaintiffs.

On the factual basis at bar, we are of opinion that the situs of the commodity sold, at the time of sale, is not of primary importance, and that delivery across the state line is not controlling; these factors are incidental merely. This view is illustrated by the following cases:

*Commonwealth of Pennsylvania* v. *Wiloil Corporation,* 316 Pa. 33, 173 Atl. 404, 101 A. L. R. 287, is forceful. Wiloil Company, a Pennsylvania corporation, engaged in selling fuel oils wholesale in that state, had its principal office at Pittsburgh. The case pertained to the question of a state gallonage tax on sales of gasoline to two separate customers in Philadelphia, price f.o.b. Wilmington, Delaware. Wiloil Company did not possess the gasoline at the time of the sales. It obtained the gasoline from a firm at Wilmington. Shipments were made direct from Wilmington to the purchasers. Held: The sales actually took place in Pennsylvania. The f.o.b. Wilmington provision was not for the purpose of designating place of delivery but of fixing the full price. The fact that for the purpose of filling its orders the Wiloil Company obtained the gasoline in Delaware was merely incidental. The sales were taxable in Pennsylvania. The judgment of the Supreme Court of Pennsylvania was affirmed by the Supreme Court of the United States, 294 U. S. 169, 79 L. Ed. 838. The latter court said: "The commerce clause does not prevent taxation of goods by the State in which they are found merely because brought from another State, for that would unduly tram-

mel state power of taxation and produce gross inequality and injustice."

Of like import is the earlier case of *Banker Bros. Company* v. *Commonwealth of Pennsylvania*, 222 U. S. 210, 56 L. Ed. 168, 32 S. Ct. 38.

Further, the ordinance under discussion does not impose a tax upon property, transportation or privilege of importation, but is an excise or privilege tax on the right to conduct a business for taking orders, selling and delivering coal and coke within the City of Bluefield. *Cf. State ex rel Porterie* v. *Hunt*, 182 La. 1073, 162 So. 777, 103 A. L. R. 9, Annotation p. 23. Since this is not an excise upon the privilege of importation nor a tax upon that which is imported, there is no undue burden upon, nor discrimination against, interstate commerce. *Commonwealth* v. *Wallace*, (Mass.) 200 N. E. 406; *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86, 78 L. Ed. 1141, 54 S. Ct. 575.

If the selling of coal brought from beyond the bounds of the state were declared exempt from the tax, there would result an unjust discrimination against the selling of coal produced in West Virginia.

These considerations lead us to the conclusion that the imposition by the City of Bluefield of the tax involved does not countervail the commerce clause of the Federal Constitution.

It is further urged that the tax under consideration results in unjust discrimination against dealers in coal and coke. This position is not well taken inasmuch as the tax is applicable alike to all persons of the stated class, to-wit, all persons selling coal or coke in the city. *Sperry & Hutchinson Co.* v. *Melton, supra; Hope Natural Gas Co.* v. *Hall*, 102 W. Va. 272, 135 S. E. 582. "It is well settled that occupations may be classified for the purpose of taxation, regardless of whether the provisions in state constitutions as to equality and uniformity are applicable, provided the classification is reasonable." 1 Cooley on Taxation (4th Ed.), sec. 349. For further general statement of the applicable principles, see 37

Corpus Juris, p. 198. It should be noted that our constitutional provision (West Virginia Constitution, Article X, section 9) in respect of equality in municipal taxes, applies to taxes on persons and property only. *Mullens* v. *City of Huntington, supra.*

Appellees make the further contention that the tax under examination is in effect a motor vehicle license, and as such is prohibited by general statute, Code 17-6-21, which reads: "No license tax shall be levied or charged by any municipality or other political subdivision of the State with respect to motor vehicles and their operation * * *." As stated above, the consequence of the ordinance is not to lay a license on the operation of vehicles, but merely to employ the vehicles' tonnage as a basis of measurement of the sales tax which the ordinance imposes. The gauge fixed by the ordinance is not limited to motor vehicles, but is inclusive of vehicles generally.

In the light of the foregoing, we are of opinion that the learned trial chancellor erred in perpetuating the injunction against the enforcement by the city and its officials of the ordinance in question as against the plaintiffs. We therefore reverse the decree, and, since we are further of opinion that the bill is without equity, we dismiss the same at plaintiffs' (appellees') costs.

*Reversed and dismissed.*