## State ex rel. CLAY S. CROUSE

*v.*

## W. D. HOLDREN

(CC 704)

Submitted September 11, 1945. Decided December 11, 1945.

*Clay S. Crouse,* for plaintiff.

*Scherer, Bowers & File,* for defendant.

*A. J. Lubliner* and *Walter V. Ross,* amici curiae.

KENNA, JUDGE:

In order to test the right of respondent, W. D. Holdren, to make arrests and otherwise act as a police officer

in the City of Beckley, Clay S. Crouse, Prosecuting Attorney for Raleigh County, filed in the Circuit Court of that county an information in the nature of *quo warranto*. The Circuit Court overruled a demurrer to the respondent's return and certified to this Court the legal questions thus raised.

The information alleges that the City of Beckley has a population of more than five thousand and is therefore subject to the provisions of Chapter 8, Article 5A, of the Code of West Virginia, being the civil service statute governing police departments; that in violation of the provisions of that chapter and article the City Council of the City of Beckley on December 12, 1944, at a regular meeting passed a resolution, set out *in extenso*, which, after reciting that the merchants of Beckley had selected W. D. Holdren as their "special merchant's watchman" who had given bond in the amount of $3,-500.00 as required by law in order to entitle him to lawfully carry deadly weapons, provided "that the said W. D. (Deck) Holdren be authorized to make arrests as police officers of the City are authorized and empowered to do, and that our Chief of Police or Captain in command of police, as well as other policemen of the City, render assistance to said special merchant's watchman and cooperate with the city police;" and provided further that the City be not liable for compensation to be paid to Holdren. The information further alleges that Holdren on the 11th of December, 1944, entered into an official bond conditioned to faithfully discharge the duties of his office and to account for all moneys received by him by virtue thereof; that a special agreement had been entered into between Holdren and Consolidated Bus Lines under the terms of which the bus line had agreed to pay a certain part of his salary; and that Holdren's acting as a police officer in the City of Beckley had resulted in an extraordinary expense to the State of West Virginia due to the fact that in a large number of arrests attempted to be made by him there had been resistances resulting in assault and battery

and prosecutions that would not otherwise have taken place. The information concludes with the allegation that Holdren is unlawfully carrying dangerous weapons and that his appointment is illegal and a subterfuge devised in order to avoid the terms and provisions of the Civil Service Act.

The return to which the Circuit Court overruled a demurrer is quite lengthy in its allegation describing a contended law enforcement emergency in the City of Beckley that required the appointment of one man to act as "special merchant's watchman", and we believe that we can deal with the legal questions raised by demurrer by considering only what we regard as its salient features.

At the outset we wish to say that we are not approaching the questions involved based upon the theory advanced in the return to the effect that the City of Beckley has the inherent power to appoint in the manner shown by the resolution of its City Council set up in the information. A municipal corporation has no powers save those expressly conferred by the legislative department or clearly implied as an integral part of those granted by its charter or general statute. *St. Marys* v. *Hope Gas Co.*, 71 W. Va. 76, 76 S. E. 841, 43 L. R. A. (N.S.) 994; When doubtful, the power is to be denied. *Hyre* v. *Brown,* 102 W. Va. 505, 136 S. E. 656, 49 A. L. R. 1230. Emergencies do not alter this principle.

The return admits that the resolution of December 12, 1944, was not in compliance with the provisions of Code, Chapter 8, Article 5A, and takes the position that it was not a violation of that Article for the reason that the appointment of Holdren was not subject to its provisions. It alleges that he was not acting as a police officer and that he did not as such make divers arrests but admits that breaches of the peace occurred during arrests made by him in the lawful discharge of his duty. It also denies that he is unlawfully carrying dangerous weapons. The return sets out verbatim Sections 7 and 17 of the Charter of the City of Beckley defining the

powers of the Mayor, among which are to nominate the Chief of Police and such additional police officers as he may deem necessary and to appoint, in vacation of the City Council, special police officers. It alleges that the requirements of the country's armed services had created so many vacancies upon the police force of the City of Beckley that it was impossible to fill them under the provisions of Chapter 8, Article 5A of the Code, and that without filling them it is impossible to maintain law and order in that City, and that the Beckley Civil Service Board did not have a list of eligibles to be examined under the provisions of Code, 8-5A-9, and that consequently an emergency existed at the time of Holdren's appointment which that appointment was intended to meet, and that the provisions of the Code are intended to and do apply to paid police departments, and that Holdren being unpaid by the City of Beckley does not fall within the purview of the Civil Service Act.

From the allegations of the information and return, we are unable to distinguish the duties of the position held by Holdren from those of a regular policeman of the City of Beckley. It may be that he did not wear a uniform while on duty, but he was then armed and he did then make arrests. The return alleges no duties other than those of a peace officer that he was required to perform, although it alleged that Consolidated Bus Lines is among the businesses that pay his salary. There has been no effort to bring Holdren within the purview of a statute granting to persons privately employed, but with special quasi public duties, the right to carry arms and make arrests. His return rests his defense entirely upon the power of the City Council to create and fill the office of "special merchant's watchman", because of their inherent power to so act in order to meet an emergency critically endangering law and order in the City of Beckley. There is no authority sustaining that view.

·It is true that Holdren's appointment has been brought about differently from that of police officers. The charter of Beckley provides that policemen shall be selected

by the Mayor, the regular force by the nomination of a chief and the number of additional members the Mayor may deem necessary, with the further power to appoint, in vacation of council, special officers when deemed necessary. The Mayor has the arbitrary power of removal. We are cited to no provision giving the council the initial power of appointment under any circumstances, though by clear inference it must confirm the Mayor's nominations to the regular force.

The return stresses the fact that there is no eligible list of candidates upon which the Civil Service Board may now act under the provisions of the Civil Service Act, and therefore the City Council was impelled to act. Code, 8-5A-10, is expressly intended to provide a way of filling vacancies when there are "urgent reasons" for doing so and there is no eligible list under the Civil Service Act. The Mayor of Beckley has the power to create vacancies and nominate to fill them. The return does not state Holdren's reason for not being listed as eligible or provisionally appointed under Code, 8-5A-10.

As to the contention that the Civil Service Act applies only to police officers paid a salary by the City of Beckley, the fact that the act in question in terms does apply to paid policemen and to them only, certainly does not confer the right to appoint privately paid officers upon the City Council of Beckley. Holdren must show a valid title to the office he claims. To say that his claim violates no provision of the Civil Service Act because that act does not apply, without pointing out the basis of his claim to public office other than what he alleges to have been necessity, falls far short.

We are of the opinion that the reading of the Civil Service Act in full shows plainly that when it refers to "paid police departments" that is done in an effort to distinguish them from volunteer departments. Holdren is certainly not a volunteer. We believe the Civil Service Act does apply.

In our opinion, the Civil Service Act provides a way of meeting an emergency that requires the appointment of one additional police officer in a city of more than thirteen thousand population. If that were not so and if the act did not apply, there would still be no power in the City Council, by legislative grant in the city's charter or otherwise, to make the appointment.

The order of the Circuit Court of Raleigh County overruling the demurrer to respondent's return is reversed.

*Reversed.*