SHULICK-TAYLOR COMPANY, *et al.*

*v.*

THE CITY OF WHEELING, *et al.*

(No. 9904)

Submitted April 16, 1947.   Decided May 27, 1947.

*John D. Phillips* and *Charles P. Mead,* for plaintiffs in error.

*O'Brien & O'Brien,* for defendants in error.

RILEY, JUDGE:

This is an injunction suit, in which the Circuit Court of Ohio County on the bill and answer, perpetuated a temporary injunction, whereby the City of Wheeling was enjoined from enforcing or attempting to enforce a certain ordinance enacted on September 17, 1946, imposing an annual registration fee, and a tax upon the privilege of selling cigarettes within said city. The cause is now before us on motion to reverse by appellant, City of Wheeling, under leave of this Court.

After ordaining that no person, group of persons, firm, partnership or corporation shall sell cigarettes, or offer or display cigarettes for sale, within the City of Wheeling, without first obtaining an annual license therefor, the ordinance levies what it calls a "license tax" upon the privilege of selling cigarettes within the city, which tax, based upon the number of cigarettes sold or offered for sale, consists of " (a) an annual registration fee of $10.00; [and] an amount equal to the sum of one cent for each twenty cigarettes, or fractional part thereof, whether contained in package, tin or otherwise." The sale of cigarettes "at wholesale for resale outside of the City" is excluded from the operation of the ordinance and only one sale of the same package of cigarettes is used in computing the amount of the tax. The registration fee is payable to the licensing officer of the city at the time of the filing of the application for a license; and, the balance by purchase from the licensing officer of adhesive stamps of design and denomination to be prescribed by the city. The ordinance prohibits sale or display for sale, until stamps have been affixed. It further provides that the tax imposed by the ordinance "shall be cumulative, and shall be in addition to all other taxes levied and collected by the City."

Plaintiffs take the position, among others, that the tax sought to be restrained is, in fact, a revenue or privilege tax, as distinguished from a license tax, and, therefore, that the council was without power to enact the same. On this the city takes issue, citing in support of its action

the cases of *Mullens* v. *City of Huntington,* 117 W. Va. 740, 188 S. E. 120, and *Lewis* v. *City of Bluefield,* 117 W. Va. 782, 188 S. E. 237, wherein this Court upheld tax ordinances based on the State's gross sales tax. In these cases the municipalities involved had acted under specific but different charter provisions, the authority in the Bluefield charter being no broader than that set forth in the general statutory provision of Code, 8-4-13, while that in the *Mullens* case was much broader in scope. The City of Wheeling, however, having no specific charter provision, must rest its case on the aforementioned provision of the Code for its authority to levy taxes. This section provides: "Whenever anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town."

The right of the State, under its sovereign power, to exact license and privilege taxes, either under the police power, or for revenue only, cannot be gainsaid. For many years it has required two separate taxes of those engaged in selling tobacco at retail. One exacts a specific sum per annum as a license for selling (Chapter 119, Acts, 1939, which repealed Article 12 of Chapter 11 of the Code), and the other is a general gross sales tax, based on the gross sales of tangibles, and applies to wholesalers as well (Code, 11-13-2 (c), re-designated "Sec. 2- (c)" in Chapter 86, Acts, 1935, and as so re-designated was last amended and reenacted by Acts, 1937, Chapter 105). It is equally as well recognized that powers of a municipality are limited to those delegated to it by the State. The scope of delegated power to tax depends upon the wording of the governing statute or charter. And the power to tax is confined to the subjects of taxation enumerated in such delegation of power, and also for the purposes designated in such delegation. Cooley on Taxation (4th ed.), Section 125. The Legislature has, by general enactment (Code, 8-4-13), as heretofore quoted, delegated power to a municipality to lay a tax for its use on anything for which

it may exact a license, and its right to license is definitely limited to those things for which the State exacts a license. And where there is doubt as to whether a tax comes within such statutory designation, the doubt is to be resolved against the tax. Cooley on Taxation (4th ed.), Section 125.

Prior to the repeal of Article 13 (Code, 11-13), and the enactment of an entirely new article in lieu thereof (Chapter 33, Acts, First Extraordinary Session of the Legislature, 1933), Section 3 (Code, 11-13-3) provided in part: "If any person shall engage or continue in any business for which a privilege tax is imposed by this article, he shall be deemed to have applied for and to have obtained from the State of West Virginia a license to engage in and to conduct such business for the current tax year, upon the condition that he shall pay the tax accruing to the State of West Virginia under the provisions of this article; and he shall hereby be duly licensed to engage in and conduct such business." It is clear that the Legislature intended by this language that all taxes enacted under Article 13 were to be classified under the designation of "license" taxes. However, in Article 13, as appears in Chapter 33, Acts, First Extraordinary Session of the Legislature, 1933, all reference to the quoted statutory classification was omitted.

In the *Lewis* case we held that Section 2 (c), Article 13, Chapter 33, Acts of the First Extraordinary Session of the Legislature, 1933, (gross sales tax) was "a license or privilege tax", and, as such, within the delegation of authority conferred upon the Council of the City of Bluefield by Code, 8-4-13, as well as by its charter. Although the terms "license" and "privilege" are sometimes used synonymously, we are of opinion that such use is unwarranted in construing the gross sales tax. The mere fact that Section 10 of Article 13 makes the tax a condition precedent to doing business, does not of itself convert a "privilege" tax into a "license" tax as referred to in Code, 8-4-13. And *a fortiori* the deletion of Code, 11-13-3, above quoted, or a

similar provision, at the time the *Lewis* case was decided, did not justify the statement contained in the opinion in that case that "the West Virginia gross sales tax * * * is correctly named by the legislature a license tax. Thus by legislative fiat the matter is set at rest." In our opinion, the deletion of said Section 3 indicates a clear legislative intendment that the gross sales tax should not be classified as a license tax. In the *Mullens* case, in which the Huntington charter contained a grant of power to "license, *tax* * * * theatres * * * and other things or business on which the state *does* or *may* exact a license tax" (italics supplied), this Court upheld, and properly so, the authority of the municipality to impose a privilege tax based upon the gross sales of retail stores. The Legislature had seen fit to extend the general statutory powers in the Huntington charter, whereas the Bluefield charter provision, following the general statute, delegated only the right to tax in those cases in which a "state license" is required.

We are of opinion that the interpretation in the *Lewis* case was unwarranted, and that Point 1, Syllabus, should be overruled. It therefore follows that there is no statutory authority for the ordinance under consideration. The ten dollar registration fee provided for in the ordinance is part and parcel of the tax sought to be imposed thereby, and is so interlocked with the stamp tax provision that it must likewise fall.

Our view of this case renders unnecessary a discussion of Section 22, Article 17, of Enrolled Committee Substitute for House Bill No. 105, passed March 7, 1947, effective ninety days from passage, which specifically precludes any municipality or governmental subdivision from levying any "excise or other tax requiring cigarettes to be stamped, or requiring licenses for sale thereof other than licenses which may be imposed as a result of licenses provided for in article twelve of this chapter [Code, 11-12]." It was upon the basis of the foregoing that this Court granted a re-argument *ex mero motu.*

For the foregoing reasons we affirm the ruling of the Circuit Court of Ohio County, and thus perpetuate the injunction.

*Affirmed.*