L. S. WALKER, JR., *et al.*

*v.*

THE CITY OF MORGANTOWN, *et al.*

(CC 791)

Submitted April 23, 1952. Decided June 10, 1952.

Fox, JUDGE, not participating.

*A. G. Stone, George R. Farmer,* for plaintiffs.

*H. William Largent,* for defendants.

LOVINS, JUDGE:

The object of this suit, instituted in the circuit court of Monongalia County, is to enjoin the collection of a tax on distributing and dispensing gasoline in the city of Morgantown. The suit was instituted by L. S. Walker, Jr., a retail gasoline dealer, the Pure Oil Company, Sun Oil Company, Gulf Oil Company, the American Oil Company, Quaker State Oil Refining Corporation, the Texas Company, Esso Standard Oil Company, Freedom-Valvoline Oil Company, and the Pennzoil Company, all of whom, other than Walker, are distributors of gasoline and other

oil products to retail dealers doing business in the city of Morgantown.

The City of Morgantown, a municipal corporation, Charles W. Loar, Mayor; Elmer W. Prince, City Manager; Edward Bierer, City Clerk and Russell Singleton, Chief of Police, are defendants. The defendants interposed a joint and separate demurrer to the bill of complaint which was sustained. The trial court thereupon certified, on its own motion and upon the joint application of the plaintiffs and defendants, its ruling to this court.

The bill of complaint alleges that L. S. Walker, one of the plaintiffs, is a retail dealer in gasoline and petroleum products, whose place of business is situated within the corporate limits of the city of Morgantown. The other nine plaintiffs, all of whom are authorized to transact business in the State of West Virginia are engaged in the business of selling at wholesale and distributing gasoline and other oil products.

The nine plaintiffs, who are wholesale distributors of gasoline and similar products, maintain and operate bulk plants outside the corporate limits of the city of Morgantown, and deliver therefrom gasoline in the city for sale at retail. The bulk plants so owned and operated by the plaintiffs are located as follows: The Pure Oil Company, at Granville, W. Va.; Sun Oil Company, at Brownsville, Pennsylvania; Gulf Oil Corporation, at Westover, W. Va.; The American Oil Company, at Granville, W. Va.; Quaker State Oil Refining Corporation, at Westover, W. Va.; The Texas Company, at Star City, W. Va.; Esso Standard Oil Company, at Westover, W. Va.; Freedom-Valvoline Oil Company, at Floriffe, Pennsylvania; and the Pennzoil Company, at Fairmont, W. Va.

The bill of complaint alleges that the annual deliveries of gasoline made by the nine distributors to their customers in the city are as follows: Gulf Oil Company 400,000 to 500,000 gallons, the Sun Oil Company approximately 288,000 gallons, Esso Standard Oil Company approximately 1,600,000 gallons, The Texaco Company 245,000

gallons, the American Oil Company approximately 847,260 gallons, and the Pure Oil Company approximately 206,502 gallons. The other corporate plaintiffs deliver sufficient amounts of gasoline to their customers in the city of Morgantown so as to render them subject to the tax levied by virtue of the ordinance hereinafter mentioned.

One bulk plant, from which gasoline is distributed, is located within the corporate limits of the city of Morgantown, being operated by the Sinclair Oil and Refining Company, who is not a party to this suit.

The council of the City of Morgantown, on September 19, 1950, adopted an ordinance entitled: "AN ORDINANCE TO PROVIDE REVENUE FOR THE CITY OF MORGANTOWN, TO REGULATE AND LICENSE THE PRIVILEGE OF DISTRIBUTING GASOLINE FOR RESALE AND RETAIL PURPOSES WITHIN THE CITY OF MORGANTOWN, AND PROVIDING PENALTIES FOR THE VIOLATION THEREOF," hereinafter referred to as the "gasoline distributors' ordinance".

The gasoline distributors' ordinance provides for an annual tax on the distribution of gasoline as follows: A distributor who distributes 100,000 gallons or less, $50.00; one who dispenses more than 100,000 gallons and not more than 200,000 gallons, $100.00; a distributor who dispenses more than 200,000 gallons and not more than 300,000 gallons, $200.00; one who distributes more than 300,000 gallons and not more than 400,000 gallons, $300.00; a distributor who dispenses more than 400,000 gallons and not more than 500,000 gallons, $400.00; one who dispenses more than 500,000 gallons, $500.00.

The gasoline distributors' ordinance requires that the tax be paid on or before the first day of July of each fiscal year.

Council of the City of Morgantown, by resolution passed on February 12, 1952, found that the license tax levied by the gasoline distributors' ordinance was inapplicable for the fiscal year beginning July 1, 1950, and ending June

30, 1951, and waived collection of such tax for that period of time. But the city clerk was directed by the council to enforce the collection of a license tax for the fiscal year beginning July 1, 1951.

The gasoline distributors' ordinance further provides that it shall be the duty of the owner, lessee or operator of "any premises within the corporate limits of the city of Morgantown upon which any gasoline is retailed, sold, distributed or dispensed to consumers, to ascertain that the distributor of such gasoline has been duly licensed under the provision of this ordinance." The provision just quoted is applicable to the plaintiff, Walker.

The City of Morgantown, on August 16, 1949, adopted an ordinance entitled, "AN ORDINANCE OF THE COM-MON COUNCIL OF THE CITY OF MORGANTOWN FOR THE RAISING OF ADDITIONAL REVENUE FOR THE CITY OF MORGANTOWN BY IMPOSING TAXES FOR THE PRIVILEGE OF ENGAGING AND CON-TINUING IN BUSINESS, OCCUPATIONS, PROFES-SIONS, VOCATIONS AND OTHER ACTIVITIES WITH-IN THE CITY OF MORGANTOWN, MONONGALIA COUNTY, WEST VIRGINIA", hereinafter designated the "privilege tax ordinance." The various sections of the privilege tax ordinance cover many activities. Article 1, Section 2 (j) of such ordinance imposes a tax on the sale of tangible property at wholesale or as a jobber "* * * equivalent to five fortieths of one per cent (5/40 of 1%) of the gross income from any such business."

It is provided in the gasoline distributors' ordinance that any taxpayer who shall have paid taxes under the privilege tax ordinance should receive credit on the annual license tax assessed under the gasoline distribu-tors' ordinance.

Plaintiffs contend that the City of Morgantown is with-out power to levy a tax on the distribution of gasoline. They base such contention on the grounds that the ordi-nance authorizing the levy taxes a privilege and is not a license tax; that, the city has attempted in the gasoline

distributors' ordinance to separate the transaction of the sale of gasoline into component parts and to tax such parts separately; that the rate imposed exceeds the basic rate of tax imposed by the state law on the sale of tangible goods at wholesale; and that the tax imposed by ordinance cannot be treated as a supplementary privilege tax.

The defendants concede, in their brief, that the tax imposed by the gasoline distributors' ordinance cannot stand as a privilege tax. Defendants admit that no tax can be collected under the ordinance prior to July 1, 1951; and that the license fees provided for in the ordinance are in excess of the fees provided for in Chapter 124, Article 14, Section 2, Acts of the Legislature, 1939, Regular Session.

The defendants contend that the City of Morgantown has the power to enact the ordinance here considered, under provisions of Code 8-4-13 which reads as follows: "Whenever anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town." Defendants also rely on the provisions of Acts of the Legislature, 1939, Chapter 124, Article 14, Section 2, providing for an annual license fee to be paid by distributors of gasoline and motor fuel. The defendants further rely upon the provisions of the Charter of the City of Morgantown, Acts of the Legislature, 1933, Regular Session, Chapter 126, Article 4, Section 7, Sub-section (a), reading in part as follows: "The council may by ordinance require that suitable magazines or places shall be provided in or near said city for the storage of * * * petroleum and the volatile products thereof, and all explosives and combustible and dangerous articles, make and enforce such regulations as it may deem necessary respecting the place and manner of transporting the same, and assess and collect an annual license tax for the keeping and selling of any or all such articles * * * "; as well as another provision of the charter reading as follows: "The council may by ordinance require city license for persons conducting

and carrying on any business or vocation in the city for which the state may now or hereafter require license * * * ". *Id.,* Article 4, Section 7, Sub-section (i).

The trial court certified three questions arising upon the ruling on the demurrer, which may be summarized as follows:  Do the pertinent provisions of general statutes and of the charter of the City of Morgantown authorize the levying of a license fee by the city upon distributors of gasoline?  (2) If that authority exists, may it exceed the amount of a similar license fee levied by the State of West Virginia?  (3) May the City of Morgantown, under provisions of Article 4 of its charter, Section 7, Sub-section (a), adopt and enforce regulations relative to the places of storage and the manner of transporting petroleum and the volatile products thereof, and collect an annual license fee for the keeping and selling of any or all of such articles?

The bill of complaint and the demurrer thereto raise the controlling question:  Does the City of Morgantown, under the existing general statutes and the charter provisions, have the power to levy the tax as provided in the gasoline distributors' ordinance?

It is a basic principle of law of municipal corporations that such corporations possess and can legally exercise only power expressly granted, or "those necessarily or fairly implied in or incident to the powers expressly granted," or "those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient—but indispensable." *Hyre* v. *Brown,* 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1230.  See *Law* v. *Phillips,* 136 W. Va. 761, 68 S. E. 2d 452; *Hukle* v. *City of Huntington,* 134 W. Va. 249, 58 S. E. 2d 780; *St. Marys* v. *Hope Natural Gas Co.,* 71 W. Va. 76, 80, 76 S. E. 841, 43 L. R. A., N. S. 994; *Kresge Co.* v. *City of Bluefield,* 117 W. Va. 17, 183 S. E. 601; *Brackman's Inc.* v. *City of Huntington,* 126 W. Va. 21, 27 S. E. 2d 71; *State ex rel. Crouse* v. *Holdren,* 128 W. Va. 365, 367, 36 S. E. 2d 481.  If any reasonable doubt exists whether a municipal corporation

has a certain power, the power will be denied. *Law* v. *Phillips, supra; Hukle* v. *City of Huntington, supra; Hyre* v. *Brown, supra.*

A municipality being without inherent power to levy taxes, if such power exists, it must be delegated by the legislature. Statutes delegating power to municipalities to levy taxes must be construed strictly, and if any doubt exists, it should be resolved against the municipality and in favor of the taxpayer. *Hukle* v.. *City of Huntington, supra; City of Fairmont* v. *Bishop,* 68 W. Va. 308, 313, 69 S. E. 802.

Though the questions certified seemed to have been raised on the assumption that the ordinance imposes a license fee, the plaintiffs contend that the ordinance, as a matter of law, imposes a tax for revenue as distinguished from a license fee. Though the title of the ordinance designates it as providing for revenue, as well as license, we are not bound by such designation. *Hukle* v. *City of Huntington, supra. Shulick-Taylor* v. *City of Wheeling,* 130 W. Va. 224, 43 S. E. 2d 54. See *City of Charlottesville* v. *Marks' Shows* (Va.), 18 S. E. 2d 890, 894.

No opinion rendered by this court has been found fully stating principles which would serve as a guide in drawing a distinction between a statute or municipal ordinance levying a privilege tax and a similar legislative measure providing for a license and a license tax. That such distinction exists has been recognized by this court in *Kresge Co.* v. *City of Bluefield et al., supra,* wherein this court said: " 'Notwithstanding the difference between taxes and an exercise of the police power, usually evidenced by a requirement of license fees, such fees are commonly called "taxes," although in reality they are not taxes nor regarded as such within statutory and constitutional provisions.' Volume I. Cooley, The Law of Taxation, Section 26, (4th ed.) 'In its specific sense, to license means to confer on a person the right to do something which otherwise he would not have the right to do.' 17 R. C. L. 474, 475. 'The term license is not involved in uncertainty or doubt. In its general or popular sense, as used with reference to occupa-

tions and privileges, it means a right or permission granted by some competent authority to carry on a business or do an act which without such license would be illegal' ". Similar expressions of this court will be found in the case of *Anderson-Newcomb* v. *Huntington,* 117 W. Va. 716, 188 S. E. 120.

In *Shulick-Taylor* v. *City of Wheeling, supra,* this court said, "The right of the State, under its sovereign power, to exact license and privilege taxes, either under the police power, or for revenue only, cannot be gainsaid". In the case of *Christopher* v. *James,* 122 W. Va. 665, 12 S. E. 2d 813, it is indicated that tax legislation which contains no regulatory features, and the proceeds of which go into general revenue, is a revenue measure. In *Mullens* v. *City of Huntington,* 117 W. Va. 740, 188 S. E. 120, this court upheld the tax levied by the municipality, resting its decision upon the special language of the municipal charter. This court in *Shulick-Taylor* v. *City of Wheeling, supra,* overruled the first point of the syllabus in *Lewis* v. *City of Bluefield,* 117 W. Va. 782, 188 S. E. 237, thus reiterating the distinction.

The fee provided for in the gasoline distributors' ordinance is not applied by such ordinance to the purpose of paying for regulation of the business, and so far as is disclosed by the record, the fee is exacted for revenue purposes, no other conditions being imposed upon the business of distributing gasoline. By the single act of payment of the fee, a distributor of gasoline obtains the right to carry on that business without further condition. The record is silent as to the cost to the municipality of any additional burdens or the necessity of police supervision. A similar situation exists as to whether the proceeds derived from the tax will be paid into the general treasury or be devoted to the expense incident to enforcing the provision of the ordinance. It is a reasonable assumption, in the absence of a showing to the contrary, that the proceeds of the tax will be paid into the general treasury. *City of Charlottesville* v. *Marks' Shows, supra,* and the authorities there cited.

We reach the conclusion that the ordinance passed by the City of Morgantown on September 19, 1950, levies a tax for revenue, and in no wise levies a license tax under the police power delegated to such municipality. The tax levied by the ordinance, being a revenue measure, defendants concede that it should not be upheld. But disre-garding such concession for the time being, we do not think that the tax can stand as a revenue measure for the additional reason that the gasoline distributors' ordinance segregates from the act of selling gasoline, which is tangible property, a component part of such transaction and attempts to levy a tax on such segregated part. Such method of taxation is invalid for the reason that many and varied taxes could be levied on a business or occupation when in fact the various activities involved in a single transaction or occupational duty is classified as a single taxable incident by the statute authorizing the levy of a tax by the state. *City of Norfolk v. Griffin Bros.* (Va.), 91 S. E. 640; *Ex Parte Simms* (Fla.), 25 So. 280. See *Hill v. City of Richmond* (Va.), 26 S. E. 2d 48, 52. See note 110 A.L.R. 1204; 38 Am.Jur., Municipal Corporations, §345. The State of West Virginia having made a classification of the taxable incident, the City of Morgantown is without power to make other classifications or to sub-divide the classification defined by statute.

The City of Morgantown has almost exhausted its power of taxation on the sale of tangible property by the adoption of the privilege tax ordinance on the 16th day of August, 1949, and if the ordinance levying a tax on the distributors of gasoline be treated as a tax on sale of tangible property, the rate resulting from such additional exaction, when added to a similar tax imposed by the privilege tax ordinance, would doubtless exceed the rate of fifteen one hundredths of one percent of the gross income from the sale of such property authorized by Chapter 105, Acts of the Legislature, 1937, Regular Session, Section 2-c, inasmuch as the present privilege tax ordinance leaves only a margin of one fortieth of one percent. Such excess levy is prohibited by the proviso in Chapter 3,

Acts of the Legislature, Extraordinary Session, 1947, Section 13-b.

Though the question whether such tax is a revenue measure or a license measure is not explicit in the certificate, we think such question is implicit in the record; that in ruling on the demurrer the trial court necessarily ruled on such question; and that it is decisive and controlling and fairly arises on the record. Therefore, we think it is unnecessary to answer the questions certified. See *Baier* v. *City of St. Albans,* 128 W. Va. 630, 637, 39 S. E. 2d 145; *Brown* v. *Smith,* 84 W. Va. 429, 100 S. E. 279. The certified questions arise only if the tax levy made by the gasoline distributors' ordinance provides for a valid license fee.

Being of the opinion that the bill of complaint is good on demurrer as an attack on the gasoline distributors' ordinance, we hold that the City of Morgantown was without authority and power to adopt such ordinance.

Therefore, the ruling of the circuit court of Monongalia County is reversed and the cause is remanded for further proceeding in accordance with this opinion.

*Ruling reversed; cause remanded.*