# MAYOR AND CITY COUNCIL OF BALTIMORE

## *vs.*

## CHESAPEAKE AND POTOMAC TELEPHONE COMPANY.

*Municipal Corporations—Powers—License Tax on Telephone Poles—Annexation Act—Obligation of Contracts—Impairment.*

The City of Baltimore, in the exercise of the powers delegated to it by the State, may impose a charge of two dollars for each telephone, telegraph, or other pole, maintained in any of the city streets.     p. 84

Acts 1918, ch. 82 (Annexation Act), secs. 2, 11, providing that all the existing city ordinances shall extend to the annexed territory, and that all roads and streets in such territory shall be held to be duly constituted highways of the city, make applicable to roads and streets in such territory an existing city ordinance imposing a charge of two dollars for each telephone, telegraph or other pole in any of the city streets.     p. 84

Legislation imposing, or authorizing the imposition of, a license fee for the maintenance of telephone poles in the city streets, does not impair the obligation of any contract between the State and the telephone company arising from the prior incorporation of the company and its acceptance thereof by the construction of its pole lines on the roads and highways.     p. 85

*Decided January 9th, 1923.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by the Mayor and City Council of Baltimore against the Chesapeake and Potomac Telephone Company of Baltimore City. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Allan A. Davis, Deputy City Solicitor,* with whom was *Roland R. Marchant, City Solicitor,* on the brief, for the appellant.

*Shirley Carter,* with whom were *Bernard Carter & Sons* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This suit was brought in the Baltimore City Court, by the Mayor and City Council of Baltimore, a municipal corporation, against the Chesapeake and Potomac Telephone Company of Baltimore City, a Maryland corporation, to recover, under the provisions of an Ordinance No. 86 of Baltimore City, approved April 20th, 1893, from the telephone company, a license fee of two dollars on each telephone pole of the company maintained by it, for the years 1919 and 1920, in and upon certain streets, lanes, and alleys, of Baltimore City, annexed thereto by chapter 82 of the Acts of 1918, known as the Annexation Act, and formerly a part of Baltimore County and Anne Arundel County.

The case was heard, by the court below sitting as a jury, upon an agreed statement of facts, and from a judgment in favor of the defendant for costs, the plaintiff has taken this appeal.

At the trial of the case, the court below refused the prayers offered on the part of both the plaintiff and defendant, and granted the following prayer of its own: "The court instructs itself sitting as a jury, that there is no evidence offered legally sufficient to entitle the plaintiff to recover and the verdict must be for the defendant."

Ordinance No. 86, approved April 20th, 1893, under which the license fee of two dollars is imposed, provides in part as follows, first, that "all persons and corporations having, using or maintaining any telegraph, telephone, electric light or

other poles in any of the streets, lanes or alleys of the City of Baltimore, shall, annually between the fifteenth day of May and the first day of June, in each and every year, file with the City Commissioner a list of all such poles so used, possessed or maintained by them, giving the accurate locations of each of such poles, and shall also have stamped, painted or printed, in legible characters, their name as owner upon each of such poles."

By section 2, it is "further enacted and ordained that annually, between the first day of June, and fifteenth day of June, all persons and corporations shall pay to the City Comptroller a fee of two dollars for each and every telegraph, telephone, electric light or other pole used, possessed or maintained by them in any of the streets, lanes or alleys of the City of Baltimore, except trolley poles used exclusively for stringing thereon wires for use in the propulsion by electricity of street passenger cars; upon receiving the above fee, the Comptroller shall deliver to the person or corporation paying the same a tin plate, with a plain and conspicuous number thereon, to be provided in the manner prescribed in the next succeeding section, for each and every pole upon which the said license fee is paid, and shall also enter into a book, to be kept for that purpose, the name of the person or corporation to whom the license is issued, and the number of poles for which it is issued, and the number of the tin plates delivered to the person paying such license fee; he shall also deliver to such person or corporation a certificate, under his own hand and the seal of the city, that such person or corporation has paid the required license fee for that year on the specified number of poles, and has received the tin plates of the given numbers therefor; such person or corporation shall then have one of such tin plates securely fastened in some conspicuous place upon each of the poles used, possessed or maintained by it or him."

It appears, from the averments of the declaration and the agreed statement of facts, that since the passage of Ordinance No. 86, approved April 20th, 1893, mentioned in the declara-

tion in this case, the defendant has complied with the provisions thereof within the limits of Baltimore City, except within the area annexed to Baltimore City by chapter 82 of the Laws of Maryland of 1918, entitled "An act to extend the limits of Baltimore City by including therein parts of Baltimore County and Anne Arundel County"; that at the time of the passage of the act the defendant had constructed and was maintaining on the following named public roads and public highways of Baltimore County and Anne Arundel County, respectively, within the area annexed to Baltimore City by the Act of 1918, 2,636 telephone poles with wires strung thereon; and has, since the passage of the act, used and maintained the poles in, upon and along the public roads and highways within the area, but has refused to pay the two dollars per pole provided for in the ordinance and has refused to otherwise comply with the provisions thereof; and that the public roads and highways are set out in the record.

It further appears, from section 8 of chapter 82 of the Acts of 1918, that, beginning with January 1st, 1919, the obligation of maintaining the public highways and performing every other governmental or municipal function in the territory added to Baltimore City by this act, passed to and devolved upon the Mayor and City Council of Baltimore City.

And by section 11 of the same act, it was further provided that all roads, streets, avenues or alleys, lying in any of the territory described in the act, which shall have been heretofore dedicated and accepted, or legally condemned as roads or streets, under the provisions of any act of the General Assembly of Maryland or of the common law, shall be held to be validly constituted public highways of Baltimore City.

The defense to the suit in this case, relied upon by the appellee, rests upon two grounds, which are stated in its brief to be, first, that the State of Maryland has not conferred upon the Mayor and City Council of Baltimore the requisite authority to impose the charge of two dollars per pole upon the appellee, for its use of the roads and highways here in question for its pole lines, and second, that if chapter 82 of the

Acts of 1918, known as the Annexation Act, in conjunction with Ordinance No. 86, approved April 20th, 1893, can be construed as conferring the requisite power, then the same are invalid per force of section 10 of article 1 of the Constitution of the United States, as acts impairing the obligation of the contract between the State of Maryland and the appellee, embodied in the grant made by the State to the appellee by chapter 471 of the Acts of 1868, or section 359 of article 23 of the Code of Public General Laws, upon its incorporation and the appellee's acceptance thereof by its incorporation and the construction of its pole lines on the roads and highways here in question.

The alleged defenses and objections here relied upon by the appellee, in this case, have been considered in a number of cases in this Court and in the Supreme Court of the United States, and the propositions of law announced in them are controlling on this appeal.

In *Ches. & Pot. Telephone Company* v. *State Roads Commission,* 134 Md. 1, it is said that it seems to be well settled, by the recent decisions of this Court, that the Act of 1868, chapter 471, now section 359 of article 23 of the Code, relied upon by the defendant, did not confer upon or give the right to telephone or telegraph companies to make special use of the State's property without compensation, or to give to these companies the exclusive use of the highways of the State free of charge.

In *Ches. & Pot. Telephone Co.* v. *State Roads Commission,* 132 Md. 194, this Court held that the general privilege thus accorded telegraph and telephone companies, formed under our incorporation law, to construct their lines on the public highways, without thereby subjecting themselves to liability for the creation of a nuisance, does not place the State under any contractual or other obligation to permit any individual company, availing itself of the privilege and protection afforded by the statute, to occupy and use the highways of the State without compensation. It was further said in that case that the right of the City of Baltimore, in the exercise of

powers delegated by the State, to impose a charge of two dollars for each telegraph, telephone, electric light or other pole used in any of the streets, lanes or alleys of the city, was sustained by this Court, and, in an affirmance of its judgment, by the Supreme Court of the United States, in the case of *Postal Telegraph Cable Co.* v. *Baltimore,* 79 Md. 502, 156 U. S. 210. And to the same effect are the cases of *Postal Telegraph Co.* v. *State Roads Commission,* 127 Md. 243; *American Tel. & T. Co.* v. *State Roads Commission,* 134 Md. 11; *St. Louis* v. *Western Union Co.,* 149 U. S. 465.

It is clear, then, under the decisions of this Court and the authorities cited, that the ordinance here in question, and it is the identical ordinance that was involved and sustained in *Postal Telegraph Cable Co.* v. *Baltimore,* 79 Md. 502, was valid legislation, and the City of Baltimore, in the exercise of the powers delegated to it by the State, had the right to impose a charge of two dollars for each telephone, telegraph and other pole used in any of the streets of the city.

But apart from the ordinance, the control and supervision of the streets and highways, lying in any of the territory annexed to the city by the Act of 1918, chapter 82, was specially provided for and conferred upon the city by the Annexation Act of 1918 itself.

By section 2 of chapter 82 of the Acts of 1918, it is provided that all the existing ordinances of Baltimore City shall be and the same are hereby extended and made applicable to such portions of Baltimore County and Anne Arundel County, as shall, under the provisions of this act, be annexed to and made part of Baltimore City.

By section 11 of chapter 82 of the Acts of 1918, it was also provided that all roads, streets, avenues or alleys lying in any of the territory hereinabove described, which shall have been heretofore dedicated and accepted or legally condemned as roads or streets under the provisions of any act of the General Assembly of Maryland, or of the common law, shall be held to be validly constituted public highways of Baltimore City.

The second proposition, that the enforcement of the provisions of the ordinance in the annexed territory would impair the obligation of an alleged "contract between the appellee and the State of Maryland," is without merit, and cannot be sustained.

In *Postal Telegraph Cable Co.* v. *Baltimore,* 79 Md. 510, it is said that "the power of the Mayor and City Council of Baltimore over the streets cannot be regarded as within the region of debate. By legislative enactment, by long continued usage, and by repeated decisions of our courts, it has been determined that it has full and complete control over the streets and highways of the city." *Lake Roland Railroad Co.* v. *Baltimore,* 77 Md. 363; *Lee* v. *Leitch,* 131 Md. 30.

In *Western Union Telegraph Co.* v. *Newholt,* 187 U. S. 424, the Supreme Court, in sustaining a similar ordinance, said: "It is conceded that the borough had the right in the exercise of its police power to impose a reasonable license fee upon telegraph poles and wires within its limits and that an ordinance imposing such fee is to be taken as *prima facie* reasonable." *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160; *Mackay Telegraph Co.* v. *Little Rock,* 250 U. S. 94.

We therefore hold in this case, as was said by this Court in *Amer. Tel. & T. Co.* v. *State Roads Commission,* 134 Md. 17, that, under all the authorities, there was no such contract between the State and the appellee that would be impaired or changed by the recovery of compensation for the use of the highways, and by such recovery no right of the company secured by either the State or Federal Constitutions would be infringed.

In *Lake Roland Railroad Co.* v. *Baltimore,* 77 Md. 384, it is said: "The power vested in them, in respect to the streets, is of a legislative character; and they can neither restrict themselves, nor their successors, by any irrepealable ordinance, in the exercise of such power over the streets, except it be by the express authority of the Legislature of the State. The power is a continuing one, to be exercised whenever the

public needs may require it; and hence the power to regrade and improve the streets from time to time must remain subject to the judgment and discretion of the legislative branch of the municipal government. But if the contention of the appellant could be maintained, the streets on which railway tracks are once laid, might, and most generally would, pass out of the control of municipal authority. For, however improvident or reckless might be the grant of privileges to street railway companies, or however much their tracks might obstruct the use of the streets by the general public, perpetual easements or servitudes would be created in the streets, and the municipal authorities would be precluded from the exercise of the ordinary power of changing grades, or making other improvements of the street, that might materially interfere with the tracks, or the operation of the road, though public necessity for such improvement might be never so urgent. And, in such case, the only means of reclaiming the street to the absolute control of the city authorities and to the general public use, would be by a resort to the power of eminent domain, * * *."

The Court, then, being of opinion that the ordinance here in question was valid legislation and the Mayor and City Council of Baltimore had the right under its police power to enforce it, in the territory added to the city by chapter 82 of the Acts of 1918, the judgment appealed from in this case must be reversed and the cause remanded, to the end that the court below may enter a judgment in favor of the plaintiff for such sum as may be found due it.

> *Judgment reversed, cause remanded, with costs to the appellant in this Court and in the court below.*