CITY OF MORGANTOWN

*v.*

FIDELITY MUTUAL LIFE INSURANCE CO.

(CC 822)

Submitted September 13, 1955. Decided December 10, 1955.

LOVINS, PRESIDENT, concurring.

*H. William Largent,* for plaintiff.

*Robert T. Donley,* for defendant.

BROWNING, JUDGE:

This case is here on certificate from the Circuit Court of Monongalia County. The plaintiff, the City of Morgantown, a municipal corporation, by a notice of motion for judgment, seeks to recover from the defendant, Fidelity Mutual Life Insurance Company of Philadelphia, Pennsylvania, a corporation, the principal sum of $695.08, with interest thereon from the 1st day of July, 1953. The notice of motion alleges that this sum is due to the City

of Morgantown under the provisions of an ordinance adopted by the Common Council of the City of Morgantown on August 15, 1950, which ordinance "licensed" insurance companies or associations engaged in insurance business within the City of Morgantown, and required such licensed insurance companies to pay as an annual "license fee" a sum equal to one per cent of the gross premiums received by them upon policies of insurance covering persons residing, or property located, in the City of Morgantown. The defendant filed its written demurrer to the notice of motion for judgment, assigning several grounds, principally that the notice of motion shows on its face that the tax sought to be imposed upon the defendant is a "privilege" or "business and occupation" tax, rather than a "license tax", and that the City of Morgantown has no authority to levy such a tax upon insurance companies. The trial court overruled the demurrer, and certified the questions arising thereon to this Court.

Subsection (i), Section 7, Article 4, Chapter 126, Acts of the Legislature, Regular Session, 1933, this Act being the charter of the City of Morgantown, reads: "The council may by ordinance require city license for persons conducting and carrying on any business or vocation in the city for which the state may now or hereafter require a license."

The general statute, Code, 8-4-13, upon which the Circuit Court of Monongalia County based its ruling upon the demurrer, provides: "Whenever anything, for which a state license is required, is to be done within such town the council may, unless prohibited by law, require a municipal license therefor, and may impose a tax thereon for the use of the town."

In *Lewis, et al.* v. *City of Bluefield, et al.*, 117 W. Va. 782, 188 S. E. 237, this Court upheld the validity of a municipal gross sales tax on the business of selling coal and coke upon the theory that it was, in effect, a license tax. However, in *Shulick-Taylor Company, et al.* v. *The*

*City of Wheeling, et al.*, 130 W. Va. 224, 43 S. E. 2d. 54, the first, and pertinent, syllabus point in the *Lewis* case was overruled, and the first syllabus point in the *Shulick-Taylor* case reads as follows: "Code, 8-4-13, which delegates to municipalities the right to impose a tax on 'anything, for which a state license is required,' does not authorize a municipality to pass an ordinance providing for a gross sales tax on cigarettes, such being a privilege and not a license tax." Apparently pursuant to the decision in the *Shulick-Taylor* case, the Legislature, at its Extraordinary Session of 1947, Chapter 3, enacted the following statute, which it designated as Code, 8-4-13 (b) : "Whenever any business or occupation, upon which the State imposes an annual privilege tax under article thirteen, chapter eleven of this code, as amended, is engaged in or carried on within any city, town or village of the state, the council or similar governing body may by ordinance, unless prohibited by existing law, impose a similar privilege tax thereon for the use of the city, town or village: Provided, however, That in no case shall the rate of such municipal privilege tax on a particular activity exceed the rate imposed by the State, exclusive of surtaxes. * * *" However, Code, 11-13-3, as amended and re-enacted by Chapter 153, Acts of the Legislature, Regular Session, 1947, provides that: "* * * The provisions of this Article shall not apply to: (a) Insurance companies which pay the State of West Virginia a tax upon premiums: Provided, however, That said exemption shall not extend to that part of the gross income of insurance companies which is received for the use of real property, other than property in which any such company maintains its office or offices, in this State, whether such income be in the form of rentals or royalties; * * *." Obviously, insurance companies, including the defendant, which pay a tax upon premiums to the State, are exempt under this provision from the imposition by the City of Morgantown of a premium privilege tax, and the plaintiff does not deny this, but maintains that the tax here imposed is a license tax based upon its charter and the provisions of Code, 8-4-13.

Point 1 of the syllabus of *Hukle et al.* v. *City of Huntington*, 134 W. Va. 249, 58 S. E. 2d. 780, quoted from *City of Fairmont* v. *Bishop*, 68 W. Va. 308, 69 S. E. 802, reads as follows: "A municipality has no inherent power to levy taxes; it can do so only by virtue of the authority delegated to it by the legislature. Its powers are limited, and the statute vesting it with power to tax must be strictly construed and strictly followed; in construing the statute all doubts should be resolved against the city and in favor of the taxpayer."

In *Walker, et al.* v. *City of Morgantown*, et al., 137 W. Va. 289, 71 S. E. 2d. 60, this Court held that where a municipal tax ordinance contained no regulatory features, required no duties to be performed by the municipality except the collection of license fees, and contained no language indicating whether the proceeds thereof were to be paid into the general treasury of the municipality, or were to be used to pay the expense of carrying out the provisions of the ordinance, it is a revenue measure "and in no wise levies a license tax under the police power delegated to such municipality."

It is true that under the provisions of Code, 8-4-13, the City of Morgantown may require a municipal license for anything whch is to be done within the city, and impose a tax thereon if for the same thing a State license is required. A State license is required by an insurance company before it can do business in this State by the provisions of Code, 33-2-6. Code, 33-1-8, as amended by Chapter 88, Acts of the Legislature, Regular Session, 1955 reads in part as follows: "* * * For annual fee for each license, fifty dollars; * * *." Prior to this Amendment, the annual license fee was ten dollars, and the Section, both prior to and after the 1955 Amendment, also required payment by insurance companies of certain service charges. Code, 33-2-37, provides that: "Every insurance company *licensed* to transact business in this State shall make a return annually, * * * of the gross amount of premiums collected and received by it * * *

on business done in this state; * * *. The annual tax which a *licensed* insurance company is required to pay under the provisions of this section shall be a sum equal to two per cent of the gross premiums received by it on the business written or renewed in this State, * * *. All such taxes paid to the commissioner shall be paid by him into the state treasury for the benefit of the state fund." (Italics supplied.) That the municipal ordinance of the City of Morgantown in question here is patterned after Code, 33-2-37, as amended, which is a revenue or privilege tax, and not Code, 33-1-8, as amended, requiring insurance companies to pay a State license tax, is obvious. The necessary elements to make this ordinance a license tax, rather than a privilege tax, in accordance with the rule laid down in *Walker, et al.* v. *City of Morgantown, et al., supra,* are not present. The two per cent premium tax upon insurance companies imposed by the State is clearly a revenue measure, as is the city ordinance. Insurance companies which pay the State of West Virginia a tax upon premiums are exempt from such a municipal tax, as heretofore noted.

It is apparent from an examination of Chapter 33 of the Code, and the several amendments thereto since 1931, that the Legislature has placed insurance companies in a separate category from other corporations. That is true of both domestic and foreign insurance companies. Both are now required to pay a two per cent privilege tax upon gross premiums, and all such companies must satisfy the Insurance Commissioner, whose office was created for the sole purpose of regulating and enforcing the laws applicable to insurance companies, that they are qualified for a State license before they can transact business in this State. Certain fees for such license must be paid, which fees actually constitute a license tax, as will be observed from the language of Code, 31-1-8, as amended, the proceeds thereof being used for paying the expense of operating the Insurance Commissioner's department. It is only such licensed insurance companies which are required to pay the two per cent on gross premiums, under

the provisions of Code, 33-2-37, as amended by Chapter 74, Acts of the Legislature, Regular Session, 1945, heretofore quoted.

The question of whether a foreign insurance corporation is required to qualify with the Secretary of State and the Auditor, in addition to complying with the stringent regulations of Chapter 33 of the Code, as amended, by the Insurance Commissioner, was determined by this Court in *Fidelity Mutual Life Ins. Co.* v. *Sims,* 1954, 140 W. Va. 49, 82 S. E. 2d. 312. In the Court's opinion, written by Judge Lovins, this question was answered in the negative: "Are foreign insurance companies required to qualify under Code 31-1-79 and Section 80, Chapter 119, Acts of the Legislature, 1939, Regular Session, (Michie's Code, 1949, Serial Section 935), as well as under Code 33-2-5, 6, as insurance corporations; * * * ?" To avoid the "chaos and confusion" which may result from a careless citation of authority, it should be noted that the reference to "Code 31-1-79" is inaccurate since this section was amended by Chapter 29, Acts of the Legislature, Regular Session, 1951. Likewise, at the Regular 1951 Session, the Legislature, by Chapter 108, materially changed the provisions of "Code 33-2-5". Judge Lovins, in his concurring opinion in *Cochran* v. *Trussler, Superintendent of Upshur County Schools,* 1955, 141 W. Va. 130, 89 S. E. 2d. 306, succinctly stated that: "Hitherto, it has been the practice and usage by this Court to accurately designate statutes as Acts of the Legislature when such statutes have been enacted after the adoption of the 1931 Code, which is the only official Code of the State of West Virginia. * * *" "The Bench and the Bar of this State are entitled to accurate citations of the authorities cited in an opinion. By such accuracy, chaos and confusion have been avoided. Otherwise, a careless citation of such authorities results in confusion. * * *"

Since the City of Morgantown has no authority, from the only source from which it could come, the Legislature, to impose a premium privilege tax upon insurance companies, which pay the State of West Virginia a tax upon

premiums, the ordinance, upon which the city relies to recover in this proceeding by notice of motion for judgment, is invalid, in so far as it attempts so to do, and the demurrer of the defendants to the notice of motion for judgment should have been sustained. The decision of this Court upon the controlling question makes it unnecessary to discuss the other questions which were certified. The action of the Circuit Court of Monongalia County in overruling the defendant's demurrer is reversed.

*Ruling reversed.*

LOVINS, PRESIDENT, concurring:

I concur in the result reached in this case, but I do not concur in the use of the following language: " * * * in *Fidelity Mutual Life Ins. Co.* v. *Sims,* 1954, 140 W. Va. 49, 82 S. E. 2d 312. In the Court's opinion, written by Judge Lovins, this question was answered in the negative: 'Are foreign insurance companies required to qualify under Code 31-1-79 and Section 80, Chapter 119, Acts of the Legislature, 1939, Regular Session, (Michie's Code, 1949, Serial Section 935), as well as under Code 33-2-5, 6, as insurance corporations; * * * ?' To avoid the 'chaos and confusion' which may result from a careless citation of authority, it should be noted that the reference to 'Code 31-179' is inaccurate since this section was amended by Chapter 29, Acts of the Legislature, Regular Session, 1951. Likewise, at the Regular 1951 Session, the Legislature, by Chapter 108, materially changed the provisions of 'Code 33-2-5'. Judge Lovins, in his concurring opinion in *Cochran* v. *Trussler, Superintendent of Upshur County Schools,* 1955, 141 W. Va. 130, 89 S. E. 2d 306, succintly stated that: 'Hitherto, it has been the practice and usuage by this Court to accurately designate statutes as Acts of the Legislature when such statutes have been enacted after the adoption of the 1931 Code, which is the only official Code of the State of West Virginia. * * * '. 'The Bench and the Bar of this State are entitled to accurate citations of the authorities cited in an opinion. By such accuracy, chaos and confusion have been avoided. Otherwise, a care-

less citation of such authorities results in confusion. * * * ' ''.

First, the language quoted above is clearly obiter dictum and therefore unnecessary for a decision of the instant case. Second, I can attribute its inclusion in the instant opinion to no other reason except vindictiveness. I infer that the writer of the instant opinion is provoked because I filed a concurring note in the case of *Cochran* v. *Trussler, Superintendent of Upshur County Schools,* 1955, 141 W. Va. 130, 89 S. E. 2d 306. Third, the quoted language is evidently designed to create an inference that I, in my writings, say one thing and do another. I have no such intention.

I do not recede from anything I wrote in the concurring note filed by me in the *Trussler* case. I reiterate and reemphasize what was there written.

It was an oversight for me to improperly designate Code 31-1-79 as being part of the Official Code when it was amended by Chapter 29, Acts of the Legislature, Regular Session, 1951, and again by Chapter 26, Acts of the Legislature, 1955, Regular Session. Likewise, failing to properly cite Code, 33-2-5 when it should have been designated as Chapter 108, Acts of the Legislature, 1951, Regular Session.

I accept primary responsibility for such erroneous designations. As to secondary responsibility for such error, I do not explicitly say. These oversights could have been called to my attention before the opinion in *Fidelity Mutual Life Ins. Co.* v. *Sims, supra,* was filed.

A simple statement in the instant opinion, correcting the citations, would have sufficed.

Since the language to which I object is in an opinion of this Court wherein I concur in the result, I am left no alternative except to file this concurring note.

I deprecate engaging in a controversy of this nature in public print, and while there are many things which could be said, I will say no more. I only write this concurring note to state my position.