The Chesapeake and Potomac Telephone Company

*v.*

The City of Morgantown, *et al.*

(No. 11000)

Submitted September 16, 1958. Decided October 21, 1958.

*H. Wm. Largent, George R. Farmer,* for appellant.

*Charles G. Baker, Charles S. Armistead, John G. Fox,* for appellees.

DONLEY, JUDGE:

This is a suit by The Chesapeake and Potomac Telephone Company of West Virginia, a corporation, against the City of Morgantown, Elmer W. Prince, City Manager, James A. Ashburn, City Clerk, and John W. Lewis, Acting Chief of Police of the City of Morgantown, to enjoin the enforcement of an Ordinance, adopted by the City on April 9, 1957, as amended on July 9, 1957.

A brief summary of the facts leading up to the adoption of the Ordinance is necessary in order to understand the contentions made by the parties.

Central District Telephone Company, the predecessor of the plaintiff, was granted a franchise by the City of

Morgantown on July 3, 1916, for a period of forty years. Following the expiration of this franchise, the parties were unable to agree upon the terms of a new one. The Ordinance in question, adopted on April 9, 1957, is entitled:

"AN ORDINANCE REGULATING AND CONTROLLING THE USE OF THE STREETS, ALLEYS, HIGHWAYS, A V E N U E S, SIDEWALKS AND OTHER PUBLIC GROUNDS OF THE CITY OF MORGANTOWN, WEST VIRGINIA, PRESCRIBING THE MANNER OF PLACING, CONSTRUCTING, MAINTAINING, REPAIRING AND R E M O V I N G TOWERS, POLES, WIRES, SUPPORTS, CABLES, BRACKETS, MASTS, PIPES, MAINS, DUCTS, CONDUITS, MANHOLES OR OTHER FIXTURES OR EQUIPMENT IN, ON, UNDER OR OVER THE SAME; PRESCRIBING THE MANNER OF EXCAVATING IN SAID STREETS, ALLEYS, HIGHWAYS, AVENUES, SIDEWALKS AND OTHER PUBLIC GROUNDS, REGULATING AND CONTROLLING ALL FIXTURES AND EQUIPMENT PLACED IN, UNDER, ON OR OVER THE SAME; PROVIDING LICENSES AND LICENSE FEES, PERMITS AND PERMIT FEES THEREFOR; PROVIDING FOR THE SEVERABILITY OF THE PROVISIONS OF THIS ORDINANCE; AND THE PENALTIES FOR THE VIOLATION THEREOF."

The pertinent parts of this Ordinance, which are now the subject of controversy between the parties, are Sections 1, 2, and 4, and Section 3, as amended. Sections 1, 2 and 4 provide as follows:

"Section 1. No public street, alley, highway, sidewalk, public way or public ground within the City of Morgantown, West Virginia, shall be dug into, opened, or excavated, or the surface thereof in any manner broken or injured for the benefit of any person, firm or corporation other than the City itself excepting as herein provided, and excepting as provided in the sewer ordinance of said City relating to abutting property owners. Any person, firm or corporation desiring to have any opening or excavation made in the surface of

a street, or use the streets and alleys for its benefit, shall make an application in writing to the City Manager therefor. Such application shall give the name and address of the applicant, the location and purpose of the opening or excavation and the time when such opening or excavation is to be made. All such openings and excavations shall be made by The City of Morgantown, its agents, employees or contractors. Upon approval thereof, the City Manager shall issue a work order or permit, showing the work which is to be accomplished by the City for the applicant with the estimated cost thereof and such other information as the City Manager may deem pertinent. In any proper case, the City Manager may require the applicant by bond or money deposit to insure the City payment of the work before the same is accomplished. Where any such opening, or excavation, or other disturbance, is upon a paved street the applicant shall also pay to the City a service fee to cover the cost of any permanent injury to the surface of such street. The cost of any opening, excavation or other disturbance in any public street, alley, public way or sidewalk and any such service fee shall be determined as follows:

"For each square foot of brick surface opened or injured $1.50;

"For each square foot of cement paved surface 80c;

"For each square foot of concrete base with asphalt or similar surface $1.20;

"For each square foot of concrete base with brick surface $2.00;

"For each square foot of other paving surface, such amount as the City Manager may deem proper, but not less than 50c nor more than $1.50;

"For each cubic yard of earth excavated for the first 5 feet in depth $4.00;

"For each cubic yard of earth excavated for all excavation below 5 feet in depth $6.00 per cubic yard;

"For each cubic yard of back-fill with earth where the excavation does not exceed 5 feet in depth $2.00 per cubic yard;

"For each cubic yard of back-fill with earth where the excavation to be back-filled is below 5 feet in depth $3.00 per cubic yard;

"Where either the excavation and/or the back-fill require the removal or replacement of rock or stone the charge shall be the actual cost thereof to the City.

"With any such written application for an opening or excavation to be accomplished by the City the applicant shall pay a fee of $1.00.

"No such application or permit of the City Manager to accomplish such work shall be issued for more than a single location. In addition to the fees, rates and charges above provided for, the City shall also make a proper charge, in the discretion of the City Manager, for the cost to the City of the supervision of any such project, and the cost of providing the necessary safeguards to the traveling public, and for the protection of persons and property, while such work is being accomplished. The applicant shall within ten (10) days after the completion of the work pay to the City its full costs therefor, and in the event the same shall not be paid within such period of time the City Clerk shall cause a lien to be filed in the office of the Clerk of the County Court of Monongalia County against any property which the applicant may own within the City of Morgantown, West Virginia. In the making of any such openings and excavations all necessary safeguards shall be used for the safety of vehicular and pedestrian traffic, and for the protection of lives and property.

"The foregoing is subject to the proviso that, as to any public utility company or other person, firm or corporation, having a current or existing franchise with The City of Morgantown, West Virginia, or any municipally-owned public utility providing public water service to the citizens of the City of Morgantown, that any such franchised public utility company, or other person, firm or corporation, and/or any such municipally-owned waterworks maintaining its public service lines in, on, under, over or through the streets and other public ways within the City of Morgantown, West Virginia, may at its own cost open or ex-

cavate in any street, alley, highway, avenue, public way or sidewalk for the purpose of laying, maintaining, repairing, relaying or altering such public service lines but only in such manner as may be authorized or required by its franchise, or by such municipally-owned waterworks system in such manner as the City Manager may require consistent with the existing franchise ordinances of The City of Morgantown.

"Section 2. No person, firm or corporation without a franchise or in lieu thereof a permit in writing issued by the City Manager, shall use, lay, erect, construct, maintain or repair any conduits, ducts, mains, pipes, cables, wires, manholes, posts, poles, supports, towers, masts or other fixtures, devices or equipment in, on, upon, over, under or along the streets, avenues, highways, sidewalks or other public ways or public grounds within the City of Morgantown. Any person, firm or corporation having been granted a franchise by The City of Morgantown shall erect, construct, maintain and repair the same in accordance with the terms and provisions of such franchise. Any other person, firm or corporation desiring to erect, construct, maintain or repair the same shall, before performing any such work make application in writing to the City Manager of The City of Morgantown for a permit to do and perform the same. Such application shall show the name and address of the applicant, the location, depth, or height of the work to be accomplished, the date when such work shall be started and completed, the nature thereof, and such information as the City Manager shall reasonably require. If the City Manager approves the same, he shall issue a written permit showing the name and address of the applicant, the location and nature of the work, and the date upon which the same shall be accomplished. No such application or permit shall be made or issued for more than a single location. Each such application shall be accompanied by a fee of $1.00, which fee shall be used in the administration of the procedures established by this ordinance and in the supervision, inspection and approval of the work for which such application has been made. The person, firm or corporation who has obtained a permit shall

report in writing to the City Manager's Office immediately upon completion of the work outlined in the permit.

"Section 4. Where a permit is granted for any work to be accomplished under, upon, on or over, or for the use of any of the streets, alleys, highways, avenues, sidewalks or other public grounds of the City of Morgantown under the provisions of Section 2 of this ordinance requires that barriers, barricades or other obstructions be erected on or over the same a separate application in writing shall be made, for the erection of such barriers, barricades or other obstructions, to the City Manager. Such application shall show the name and address of the applicant, the location of the work to be performed, the nature of the barrier, barricade or obstruction to be erected, and such other information as the City Manager may reasonably require. A fee of $5.00 shall accompany each such application. Upon approval of the application the City Manager shall issue a written permit therefor and a copy of such permit shall be forwarded to the Police Department at the time of the issuance of the same. The fees received under the provisions of this section shall be used in the administration of the provisions of this section, and in providing for the services of the Police Department in the regulation of traffic at the location of the erection of such barriers, barricades or obstructions. No person, firm or corporation having a franchise with The City of Morgantown shall be required to make such application or secure such permit, but shall erect any such barriers, barricades or obstructions in accordance with the provisions of such franchise and the applicable ordinances of the City of Morgantown."

It will be observed that these sections are designed for the protection of the city streets, alleys, sidewalks, and the like, against damage or injury from disturbances thereof by any person, firm or corporation, having occasion to make openings or excavations or to erect barricades in such public ways; and that it is expressly provided in Sections 2 and 4 that the fees so received by the City shall be used in the administration of the provisions thereof.

In its brief, the plaintiff states that it does not question, and has never questioned, the regulatory nature of Sections 1, 2 and 4, or the reasonableness of the fees; and that its only objection to these sections is that they constitute part of a plan to coerce the plaintiff into accepting a franchise which is unacceptable to it. More will be said of this contention hereafter in the course of this opinion.

The storm center of the dispute between the parties is Section 3 of the Ordinance, which, in its original form, provided as follows:

"Section 3. Any person, firm or corporation using the streets, alleys, avenues, sidewalks and other public ways and public grounds of the City of Morgantown for the aforesaid purposes, and not paying a franchise or license tax for such use, privilege and right, shall pay an annual license fee to The City of Morgantown, which said annual license fee shall be due and payable semi-annually on the 1st day of January and July of each year, the first such semi-annual payments to be made on the 1st day of July, 1957. Said annual license fees to be as follows:

"1. For each pole, guys, post or tower $2.00;

"2. For each 100 feet of space (opening) of duct or conduit $25.00;

"3. For each 100 feet of wire $10.00;

"4. For each manhold $50.00;

"5. For each 100 feet of overhead or underground cable $20.00.

"6. For each 100 feet of pipe $15.00.

"If two or more persons, firms or corporations use the same poles, guys, posts, towers, ducts or other facilities, each shall be liable for and pay such annual fees for the same. Provided, however, that any public utility company or any other person, firm or corporation having a current or existing franchise with The City of Morgantown and paying a franchise or license fee therefor, or any municipally-owned public utility providing

any public service to the citizens of the City shall not be liable for the payment of any such annual fees for any such poles, guys, posts, towers, ducts, conduits, manholes, wires, cables, pipes or other facilities as provided in this Section nor shall any such franchised public utility company, person, firm or corporation paying such franchise tax or license fee to the City be liable for any such annual fees where it has a joint interest with others or uses any such facilities jointly with others.

"Any governmental agency exercising any of the privileges of this ordinance shall be exempt from the annual license fees provided for in this Section.

"Every person, firm or corporation liable for the annual license fees provided for in this Section shall pay the same to the City Clerk, as provided for herein and with such payment shall make a report to said Clerk, which said report shall be on a form provided by the City Clerk and shall show the following with regard to such person, firm or corporation:

"1. The number of poles, guys, posts and towers maintained in said City;

"2. The number of feet of space (opening) of duct, conduit, main, pipe or wire, or cable, so maintained within said City;

"3. The number of manholes maintained within said City;

"4. The number of poles, guys, posts, towers, ducts or other facilities jointly maintained with others;

"5. Any other facilities within the provisions of this ordinance;

"6. The amount of license tax due the City;

"7. Such other information as the City Clerk may reasonably require on such form to enable him to properly assess said license taxes and make collection of the same."

Prior to the adoption of the Ordinance, and while the parties were still negotiating, some time in March, 1957,

five of the employees of the plaintiff were arrested by the City for stringing telephone wires, and the plaintiff takes the position that such fact made it apparent that the City was embarking upon such a program in order to force the plaintiff into an agreement for a new franchise. Following the adoption of the Ordinance on April 9, the plaintiff filed its bill of complaint on April 15, 1957, and was awarded a temporary injunction against the enforcement of the Ordinance. In accordance with the order of the circuit court, the plaintiff filed an inventory of its facilities located in the public streets, and it thereupon appeared that the application of the fee schedule above set forth in Section 3 of the Ordinance would result in the payment of approximately $240,000.00 a year by the plaintiff. Thereupon, on July 9, 1957, the City amended Section 3 of the Ordinance. The changes made by the amendment were to substitute the words "use fee" for the words "license fee" in every instance; and the schedule of payments for such fees was changed as follows:

"1. For each pole, guys, post or tower $2.00;

"2. For each 100 feet of underground duct or conduit $25.00 (2 or more ducts or conduits in parallel and within 6 inches of each other shall be counted as one);

"3. For each 100 feet of wire $1.00;

"4. For each manhole $50.00;

"5. For each 100 feet of overhead or underground cable not incased in duct or conduit $2.00;

"6. For each 100 feet of pipe $15.00."

In addition, the Ordinance recited that:

"WHEREAS, it appears to the Council that the fees and charges imposed upon persons, firms and corporations under Section 3 of the above mentioned Ordinance do not provide proper classifications and in some instances actually provide for double charges for the use and occupation of the same areas of the City streets, and also provides a scale of fees or charges which in some in-

"stances are in excess of the administrative costs to the City and of the value of the space occupied."

The change in the schedule of fees set forth in the amendment to the Ordinance reduced the charge to the plaintiff from approximately $240,000.00 to $40,000.00 annually, and it will be observed that while the original Section 3 denominated the charge an "annual license fee", the amended Ordinance denominated it an "annual use fee". In neither the original nor the amended Section 3 are there any provisions containing any regulatory words, providing for any duties to be performed by the municipality, except the collection of the fees, nor is there any language indicating whether the proceeds are to be paid into the general treasury, or are to be used to pay the expense of carrying out the provisions of the Ordinance. Compare *Wisconsin Telephone Co.* v. *City of Milwaukee*, 126 Wisc. 1, 104 N. W. 1009. In fact, it is conceded by the City that the "use fee" is purely for revenue purposes, but it is contended that the City is authorized to charge a "rental" to the plaintiff for the portion of the streets occupied by it.

The determination of this issue is the crux of the case. In order to decide it, we shall briefly review the law upon the subject of municipal powers as enunciated by the decisions of this and other courts.

It is axiomatic and fundamental that a municipality has no inherent power to levy taxes, and that it can do so only by virtue of the authority delegated to it by the Legislature. *City of Fairmont* v. *Bishop,* 68 W. Va. 308, 69 S. E. 802; *Hukle* v. *City of Huntington,* 134 W. Va. 249, 58 S. E. 2d 780. In *Walker* v. *City of Morgantown,* 137 W. Va. 289, 71 S. E. 2d 60, in a suit to enjoin the collection of a tax on the distribution and dispensing of gasoline sought to be imposed by the municipality, it was held that a municipal ordinance containing no essential regulatory words, providing for no duties to be performed by the municipality, except the collection of license fees, and containing no language indicating whether the proceeds are to be

paid into the general treasury of the municipality or are to be used to pay the expense of carrying out the provisions of the Ordinance, imposes a revenue tax under the taxing power delegated to such municipality, and is not the exercise of a delegated police power, notwithstanding the Ordinance is designated as a "license fee ordinance". In the course of that opinion, the Court said:

> "It is a basic principle of law of municipal corporations that such corporations possess and can legally exercise only power expressly granted, or 'those necessarily or fairly implied in or incident to the powers expressly granted,' or 'those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient—but indispensable.' *Hyre* v. *Brown,* 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1230. See *Law* v. *Phillips,* 136 W. Va. 761, 68 S. E. 2d 452; *Hukle* v. *City of Huntington,* 134 W. Va. 249, 58 S. E. 2d 780; *St. Marys* v. *Hope Natural Gas Co.,* 71 W. Va. 76, 80, 76 S. E. 841, 43 L. R. A., N. S. 994; *Kresge Co.* v. *City of Bluefield,* 117 W. Va. 17, 183 S. E. 601; *Brackman's Inc.* v. *City of Huntington,* 126 W. Va. 21, 27 S. E. 2d 71; *State ex rel. Crouse* v. *Holdren,* 128 W. Va. 365, 367, 36 S. E. 2d 481. If any reasonable doubt exists whether a municipal corporation has a certain power, the power will be denied. *Law* v. *Phillips, supra; Hukle* v. *City of Huntington, supra; Hyre* v. *Brown, supra.*

> "A municipality being without inherent power to levy taxes, if such power exists, it must be delegated by the legislature. Statutes delegating power to municipalities to levy taxes must be construed strictly, and if any doubt exists, it should be resolved against the municipality and in favor of the taxpayer. *Hukle* v. *City of Huntington, supra; City of Fairmont* v. *Bishop,* 68 W. Va. 308, 313, 69 S. E. 802."

To the same effect is *City of Morgantown* v. *Fidelity Mutual Life Insurance Co.,* 141 W. Va. 405, 90 S. E. 434.

We consider that it is settled under the foregoing authorities that Section 3 of the Ordinance is invalid, for the reason that it is quite apparent that the so-called "use

fees" are imposed purely for the purpose of obtaining general revenue, and involve no regulatory features, which would bring them within the category of license fees. See 9 McQuillin, Municipal Corporations, 3rd Ed., Section 26.15. We have been cited to no authority, and we know of none in this jurisdiction, which holds to the contrary. Nor have we found or have there been cited to us, any provisions of the Constitution or of the statutes of this State which delegate to any municipality the power to impose a "use fee" upon any person, firm or corporation for the privilege of occupying any portion of the public ways within a municipality.

In Article X, Section 1 of the West Virginia Constitution, it is provided that: "The legislature shall have authority to tax privileges, franchises, and incomes of persons and corporations. . . ." In Article X, Section 9, it is provided that: "The legislature may, by law, authorize the corporate authorities of cities, towns and villages, for corporate purposes, to assess and collect taxes; but such taxes shall be uniform, with respect to persons and property within the jurisdiction of the authority imposing the same." It has been held that the limitation that taxes shall be uniform does not purport to cover license and privilege taxes which are in the nature of excises, but only applies to taxes on persons and property. *S. Mullens et al., Partners, etc. v. City of Huntington, et al.*, 117 W. Va. 740, 188 S. E. 120. In Article XI, Section 5 of the Constitution, it is provided that: "No law shall be passed by the Legislature, granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway, proposed to be occupied by such street railroad." In construing an identical provision of the Constitution of Oklahoma, the Circuit Court of Appeals for the Tenth Circuit in the case of *City of Tulsa v. Southwestern Bell Telephone Co.*, 75 F. 2d 343, at page 352, held that, applying the doctrine of *expressio unius est exclusio alterius*, it follows that the Legislature may grant the right to telephone companies

to occupy the public streets and highways without the consent of local municipal authorities. However, in West Virginia the Legislature has not seen fit to do so, and the question is now raised as to whether or not municipalities in West Virginia have any authority whatsoever under the general law to exact from a public utility a revenue tax for the use of its streets. No express grant of such authority has been found in any provision of the statutes. There is none in the Charter of the City of Morgantown, Acts of the Legislature, 1933, Chapter 126.

We have no occasion on this appeal to consider or to decide whether or not the defendant city, or any other municipality, has the power by general law to require the plaintiff, or any other public utility, to obtain a franchise in order to maintain its facilities in the public ways. Such power may be expressly granted in the special charter of a municipality, as was done in the City of Fairmont, *Watson* v. *Fairmont and Suburban Railway Co.*, 49 W. Va. 528, 39 S. E. 193, and in the City of Charleston, *City of Charleston* v. *Public Service Commission,* 86 W. Va. 536, 103 S. E. 673. Nor do we have any occasion to consider or to decide what may be the respective rights, duties, powers, privileges, immunities, or liabilities existing between a municipality and a public utility which may arise upon the expiration of a franchise. We express no opinion thereon; but it is interesting to observe that the privileges which are conferred upon the plaintiff by the City under Section 3 of the Ordinance, in return for the payment of the "use fee", are virtually the same as those which would be conferred by a franchise.

The City relies heavily upon the case of *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92, 13 S. Ct. 485, 37 L. ed. 380, in which the defendant contested the validity of an ordinance requiring it to pay for the privilege of using the streets the sum of five dollars per annum for each telegraph or telephone pole erected in the streets. In holding that the ordinance was not invalid, the Court said that the charge so imposed was not a privilege tax or license tax.

"It is more in the nature of a charge for the use of property belonging to the city—that which may properly be called rental . . . That . . . the city receives something which it may use as revenue, does not determine the character of the charge or make it a tax. The revenues of a municipality may come from rentals as legitimately and as properly as from taxes."

On rehearing, 149 U. S. 465, 13 S. Ct. 990, 37 L. ed., 810, the Court held that the city had this power by virtue of its charter provisions growing out of the power "to license, tax, and regulate . . . telegraph companies or corporations, street railroad cars", etc., and "to regulate the use" of the streets.

In discussing the *St. Louis* case, the Supreme Court of Mississippi in *Hodges* v. *Western Union Telegraph Co.,* 72 Miss. 910, 18 So. 84, pointed out that the ground upon which the *St. Louis* case was decided is that the City is the absolute owner in fee of its streets, the charter powers of the City are self-appointed, and it is expressly declared that St. Louis occupies a unique position, in that it does not, like most cities, derive its power by grant from the Legislature, but it framed its own charter under authority given to the people by the Constitution. The *Hodges* case further held that the Legislature not having authorized the City of Meridian to exact a rental charge, its effort so to do was beyond its power. See *Southern Bell Telephone & Telegraph Co.* v. *City of Meridian,* 154 Fed. Supp. 736, 740.

In the case of *School District of McCook* v. *City of Mc-Cook,* 163 Neb. 817, 81 N. W. 2d 224, the Court held that while a municipality under the powers delegated to it may by ordinance install parking meters, if such ordinance is, in fact, a revenue measure, it is unconstitutional for the reason that it lacks the element of uniformity necessary to the validity of revenue enactments, and that "a revenue tax may not be imposed under the guise of a police regulation." The Court went on to say: "The city has no right to charge for the use of public streets. It may not lease

nor rent the area within a public street nor charge a toll for the use thereof."

In the case of *City of Pella* v. *Fowler,* 215 Iowa 90, 244 N. W. 734, after the expiration of a franchise to operate a telephone system, the operator continued to occupy the streets of the city. The city sought to recover upon an alleged implied contract to pay the fair and reasonable value of the use of the streets. The Court held that the city was without power or authority to lease the streets and public places thereof for use in maintaining and conducting a telephone exchange. The city insisted that it had the right to recover rental for the streets and public places. The Court said:

> "It is well settled in this State by many decisions of this Court that cities and towns exercise only such power and authority in such cases as are conferred upon them by legislative enactment. . . . Our attention is called to no statute in which the Legislature has conferred authority upon cities and towns to demand rent or compensation for the use of the streets and alleys thereof. In so far as this question has been considered by this Court, the holding has been to the contrary. *City of Des Moines* v. *Iowa Telephone Co.,* 181 Iowa 1282, 162 N. W. 323, *Hilgers* v. *Woodbury County,* 200 Iowa 1318, 206 N. W. 660."

In the case of *City of Portland* v. *Pacific Telephone & Telegraph Co.,* 5 Fed. Supp. 79, it was held that the State could validly delegate to a Home Rule city the authority to levy a privilege tax for the use of the public streets of a municipality upon any public utility operating within such city, without a franchise for a period of one year. The implication to be drawn from this case is that without such express grant of authority by the Legislature, the municipality would not have it.

Where a statute confers certain specific powers on municipalities, those not enumerated are withheld. *Eaton* v. *Town of Sidney,* 211 Iowa 986, 231 N. W. 475; *State ex rel. Bibb* v. *Chambers,* 138 W. Va. 701, 77 S. E. 2d 297.

A case which is strikingly similar to the instant case is that of *Village of Lombard* v. *Illinois Bell Telephone Co.*, 405 Ill. 209, 90 N. E. 2d 105 (1950). There, the telephone company had been operating under a franchise which terminated in December, 1946. No charge or license was ever exacted by ordinance. On February 2, 1948, the city enacted an ordinance which provided that it should be unlawful to maintain the wires, poles and other equipment of the company, without complying with the terms of the ordinance. The ordinance further provided:

> ". . . each person, firm or corporation maintaining any pipes, conduits, cables, poles or wires in or under any public place shall pay to the village for the privilege of so maintaining such equipment a sum equivalent to 3 per cent of the gross receipts to such person, firm or corporation for the services, current, or gas rendered to premises within the village."

The ordinance further imposed a penalty of not less than $10.00 nor more than $200.00 for each violation of the ordinance, and provided that a separate offense should be deemed committed on each day during or on which a violation occured or continued. The city brought suit to recover the penalty of $200.00 a day, amounting to a total of $24,000.00. The Court said:

> " . . . Appellant [the city] admits it is not a police or regulatory measure, but claims it is in the nature of a rental for the use of its streets. On the other hand, the appellee contends there is no grant of authority by the General Assembly, either direct or implied, authorizing a municipality to make such a charge, and that it is a privilege or occupation tax, for which no authority has been granted by the legislature; and that conceding, but not admitting, that the charge is intended to be considered as rental for the use of the public streets, the same is illegal because of want of authority upon the part of the village to make such a charge."

The Court also pointed out that taxes are generally defined as coming within two classes, property taxes and

excise taxes; and that excise taxes are such as occupational, license, privilege, franchise, and other types which are a charge for a privilege arising from the use of property. It was reiterated that a municipal corporation has no inherent powers of its own; and it is not endowed with inherent power to license or exact payment for a privilege. The Court further said:

> "It will be observed that there is no provision or language in the ordinance which makes any reference to rental, or any language or description from which rental could be inferred. The tax is upon the privilege of doing business, although the pretense is made in the briefs that the charge is in the nature of a rental. . . . Beyond question, if the provision for the payment of 3 per cent of the gross receipts contained in the ordinance is considered a charge for the privilege of carrying on business in the village of Lombard, it is invalid as exacted without authority granted by the General Assembly."

At this point it may be observed that under our statutes a municipal corporation may not impose a privilege tax upon a telephone company. Code, Chapter 8, Article 4, Section 13b, construed in connection with Chapter 11, Article 13, Section 2b. Cf. *City of Morgantown* v. *Fidelity Mutual Life Insurance Co.*, 141 W. Va. 405, 90 S. E. 2d 434.

The Illinois Court went on to say that:

> "Appellant, however, contends that the 3 per cent charge is in the nature of a rental for the use of the streets of the village . . . . and while power may be granted by the General Assembly to permit the use or the restriction of the use of the streets, such power is to be strictly construed. Numerous powers and rights have been granted to a municipality by the General Assembly over the streets of a city, but they are all regulatory in character, and do not grant any authority to rent or to lease parts, or all, of a public street or public grounds. . . . There being no authority granted by the General Assembly to lease or to let public streets for a rental based upon gross

receipts or otherwise, the village had no power to exact a rental charge for the use or permission to use the streets and alleys of the village of Lombard. No case from Illinois has been called to our attention authorizing a municipality to charge rent for its streets, and in other States such power has been held to be nonexistent. City of Pella v. Fowler, 215 Iowa 90, 244 N. W. 734; City of New York v. Bee Line, Inc., 246 App. Div. 28, 284 N. Y. S. 452, affirmed 271 N. Y. 595, 3 N. E. 2d 202; City of Cincinnati ex rel. Ott v. Union Gas & Electric Co., 49 Ohio App. 166, 195 N. E. 488. The ordinance in question cannot be sustained as authority to collect rental for the use of a public street. *The village is not acting as a proprietor demanding pay for the use of its property, but as a tax-levying body for revenue purposes . . ."* (Italics supplied.)

There is no magic in labels, although the City apparently thought so when it amended the Ordinance by substituting "use fee" in place of "license fee". Under the foregoing principles, we hold that the City of Morgantown does not have the power, express or implied, to exact a "use fee" from the plaintiff. Other authorities cited by the defendant lend no support to its contention. *Postal Telegraph Cable Co.* v. *Baltimore,* 156 U. S. 210, 15 S. Ct. 356, 39 L. ed. 399, was affirmed upon the authority of the *St. Louis* case. *Mayor and City Council of Baltimore* v. *C. & P. Telephone Co.,* 142 Md. 79, 120 A. 229, was, in turn, affirmed upon the authority of the *Postal Telegraph Cable Company* case. *Western Union Telegraph Co.* v. *Borough of New Hope,* 187 U. S. 419, 23 S. Ct. 204, 47 L. ed. 240, held that, under the particular facts of that case, the imposition of a municipal license fee on telephone poles and wires was not obnoxious to the Commerce Clause of the Constitution of the United States. The same question was involved in *Atlantic & Pacific Telegraph Co.* v. *City of Philadelphia,* 190 U. S. 160, 23 S. Ct. 817, 47 L. ed. 995. *In Western Union Telegraph Co.* v. *City of Richmond,* 224 U. S. 160, 32 S. Ct. 449, 56 L. ed. 710, relief was sought wholly on the ground that the telegraph company had such rights that no state legislation could touch it.

Cases which recognize the licensing or regulatory power of a municipality with reference to motor vehicles are inapplicable. *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781; *Henderson* v. *City of Bluefield*, 98 W. Va. 640, 127 S. E. 492; *County Court of Webster County* v. *Roman*, 121 W. Va. 381, 3 S. E. 2d 631. Likewise cases such as *Tsutras Automatic Phonograph Co.* v. *City of Williamson*, 132 W. Va. 22, 51 S. E. 2d 427, recognizing the power of a municipality to require license fees for the operation of automatic phonographs and pin ball machines, have no pertinency, although it may be noted that in this case the Court significantly warned that a municipality does not have unlimited power in respect to the imposition of a license tax, and that it must bear some fair relation to the value to the licensee of the license so issued.

We now pass to a consideration of the contention of the plaintiff that the license fees imposed by Sections 1, 2 and 4 of the Ordinance are discriminatory, and deprive the plaintiff of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. In support of this contention the plaintiff relies upon *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 8 S. Ct. 737, 31 L. ed. 650. We are unable to see the pertinency of this case to the issue under consideration. General statements in the opinion to the effect that the Fourteenth Amendment was designed to prevent any person, or class of persons, from being singled out as a special subject for discriminatory and hostile legislation, are undoubtedly true. However, there is nothing upon the face of the Ordinance here under consideration nor in the evidence produced at the hearing, which establishes that the plaintiff was so singled out. It was shown that there are other corporations in the City of Morgantown which have no franchise and which are subject to the terms and provisions of the Ordinance.

The plaintiff also relies upon *Ligare* v. *City of Chicago*, 139 Ill. 46, 28 N. E. 934, in which the Court held that a municipality has no power to condemn land for a

street for the express purpose of giving a railroad company the use of it in such manner as to exclude all other travel therefrom, and that the city had no power to condemn private property for private purposes. It was said that the purpose for which a thing is done is very different from the motives that may have actuated those by whom it is done. Conceding that this is a valid distinction, we cannot go back of the declared objects and purposes of the Ordinance, where, as here, it is apparent that the City is legitimately exercising its delegated powers. 5 McQuillin, Municipal Corporations, 3rd Ed., Section 16.90. In the nature of the case, license taxes cannot be strictly equal and uniform. Classification is not discrimination, and it is sufficient that those in the same class are treated with equality. *C. & P. Telephone Company of Virginia* v. *City of Newport News,* 196 Va. 627, 85 S. E. 2d 345. The fact that one person, firm or corporation falls within a class upon which a license tax is imposed does not of itself make the tax discriminatory. *Standard Oil Co.* v. *City of Fredericksburg,* 105 Va. 82, 95, 52 S. E. 817, 821. "The equal protection provisions of the Federal and State Constitutions do not preclude resorting to classification for purposes of legislation if such classification is reasonable, is founded upon pertinent and real differences, and has as its object a purpose germane to the legislation." Syl. 4, *Tweel* v. *West Virginia Racing Commission,* 138 W. Va. 531, 76 S. E. 2d 874. See 16A C. J. S., page 424. Nor is there a deprivation of the property of the licensee without due process of law. *Manhattan Company of Virginia* v. *County Board of Arlington County,* 197 Va. 765, 91 S. E. 2d 408. We hold that the classification made in the Ordinance between franchised and nonfranchised persons, firms and corporations is a reasonable one and is not violative of any provision of either the State or the Federal Constitutions. No support for the plaintiff's position is found in the case of *Town of Fulton* v. *Norteman,* 60 W. Va. 562, 55 S. E. 658, which holds that a municipal ordinance may not validly discriminate against the sale or use of articles of lawful trade merely upon the ground of the place of their production.

The provisions of Sections 1, 2 and 4 of the Ordinance are not void for uncertainty. Nothing to the contrary was held in *Pence* v. *Bryant,* 54 W. Va. 263, 46 S. E. 275, nor in *State* v. *Lantz,* 90 W. Va. 738, 111 S. E. 766.

For the reasons hereinabove stated, we are, therefore, of the opinion, and so hold, that Sections 1, 2 and 4 of the Ordinance are valid, and Section 3 is invalid.

We are further of the opinion that the invalidity of Section 3 does not render Sections 1, 2 and 4 invalid. Section 9 of the Ordinance provides that:

> "If any sentence, paragraph or section of this ordinance shall, for any reason, be adjudged invalid or void by any Court of competent jurisdiction, such judgment shall not affect, or impair, or invalidate the remainder of the provisions of this ordinance, but shall be confined in its operation and effect to the sentence, paragraph or section directly involved in the cause, action or controversy in which such judgment shall have been rendered."

While such a declaration is not conclusive, it should be given great, if not controlling, weight in the application of the general rule that where a part of an Act is invalid, that fact does not authorize the courts to declare the other provisions of the Act to be void, unless they are so connected in subject matter, dependent on each other, or otherwise so connected in meaning, that it cannot be presumed that the legislative body would have enacted the one without the other. *State* v. *Edwards,* 95 W. Va. 599, 122 S. E. 272. We are of the opinion that Section 3 is not such a substantial part of the legislative scheme as to render materially ineffective the entire Ordinance. Legitimate objects and purposes are accomplished by the imposition of the license fees exacted under Sections 1, 2 and 4, even though the revenue measure sought to be enacted by Section 3 is eliminated. Cf. *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 159 S. E. 834.

There remains to be mentioned certain procedural points raised by the City which will be considered briefly.

The City contends that the trial Chancelor erred in rendering a final decree after the filing of the plaintiff's second amended bill of complaint without giving the City an opportunity to demur thereto or to answer the same. It may be conceded that this is true. 1 Miller's Hogg's Equity Procedure, Sec. 370. However, we can discover no prejudice to the City resulting therefrom. The allegations of the original and supplemental bills of complaint were sufficient to enable the Chancellor to pass upon the validity of the Ordinance, as a matter of law. The second amended bill added nothing to the case except to set forth that by reason of a franchise granted to the plaintiff by the Town of Sabraton (which was thereafter incorporated into the City and now constitutes the Sixth Ward thereof), the Ordinance has no applicability to the plaintiff within any part of the City. This was a mere legal conclusion upon the part of the pleader and, in reality, added nothing to the allegations of the original and supplemental bills. The error was, therefore, harmless and constitutes no ground for reversal of the decree. However, the plaintiff contends that the existence of the franchise from the Town of Sabraton has the legal effect claimed, as aforesaid, and it argues that, in terms, the Ordinance applies only to persons, firms or corporations which are operating without a franchise from the City. We cannot agree to such a narrow and unreasonable interpretation of the Ordinance. The City concedes that the Ordinance does not apply to any operations conducted by the plaintiff within the Sixth Ward. To attach to the Ordinance the interpretation sought by the plaintiff would render it practically meaningless, and it is not to be presumed that the City intended to do a useless thing, and in one breath to exercise its powers and in the next breath to eliminate from the object of such exercise one of the chief public utilities to which the provisions were applicable. To the extent that the Ordinance is valid, we therefore hold that it operates upon the plaintiff within all areas of the City

except that embraced within the limits of the former Town of Sabraton.

The City further contends that the trial Chancellor erred in granting the injunction for the reason that the bill was not properly verified. There is no merit in this point. The trial Chancellor may grant an injunction if he is satisfied that ground for such relief appears by affidavit, *or otherwise*. "Such objection [lack of verification] after the injunction is granted can amount to nothing but a mere legal quibble." *McGregor* v. *Camden*, 47 W. Va. 193, 195, 34 S. E. 936. Code, Chapter 53, Article 5, Section 8. The decision in *Shonk* v. *Knight, Trustee*, 12 W. Va. 667, is not in conflict with this principle.

It is next contended by the City that a court of equity will not enjoin the enforcement of a municipal ordinance upon the sole ground that it is illegal. In support of this position we are referred to *Williams* v. *County Court of Grant County*, 26 W. Va. 488, which involved a taxpayers' suit to stop the collection of a dog-tax; and to *Mann* v. *County Court*, 58 W. Va. 651, 52 S. E. 776, in which a writ of mandamus was sought to compel a county court to call a special election to determine whether a county seat should be removed. We do not think that these authorities are controlling, in view of an established line of cases in which this Court has permitted the remedy of injunction to test the validity of municipal ordinances. The distinction was made almost seventy-five years ago in *Christie* v. *Malden*, 23 W. Va. 667, and it was there held that if a municipal corporation erroneously or illegally taxes property which it has the power to tax in a proper manner, the remedy for such error must be sought generally in a court of law; but if it acts *ultra vires* by taxing property not subject to taxation, or taxes property which it may tax, beyond the limit fixed by the organic law conferring the power to tax, a court of equity will enjoin its collection. In recent years the remedy of injunction against municipalities in such cases has been recognized, by implication, if not expressly, in *Shulick-Taylor Co. v.*

*City of Wheeling,* 130 W. Va. 224, 43 S. E. 2d 54; *Alderson* v. *City of Huntington,* 132 W. Va. 421, 52 S. E. 2d 243; *Hukle* v. *City of Huntington,* 134 W. Va. 249, 58 S. E. 2d 780; and *Walker* v. *City of Morgantown,* 137 W. Va. 289, 71 S. E. 2d 60.

We have carefully considered other arguments made and other authorities cited by both the plaintiff and the defendants concerning other phases of the litigation, but we think that what we have said sufficiently disposes of the case.

The decree of the Circuit Court of Monongalia County, entered on January 9, 1958, is reversed, insofar as it enjoins the defendants and their officers, attorneys, agents, servants and employees from in any manner enforcing or attempting to enforce, against the plaintiff or its agents or employees, the provisions of the Ordinance, with the exception of Section 3, as amended. The decree is affirmed insofar as it enjoins the enforcement of Section 3 of the Ordinance, as amended. The plaintiff, as the party substantially prevailing, is awarded recovery of all costs both in the circuit court and in this Court, including as a part thereof the cost of printing the record. Code, Chapter 59, Article 2, Section 11.

*Reversed in part; affirmed in part.*